† FRANKLIN BANK *versus* STEVENS *&* al.

Whether entries made by order of Court upon its docket as to the disposition
of actions, such as "to become nonsuit," "to be defaulted," "to abide, &c.,"
shall be stricken off, is within the discretion of the Court, and to such orders
no exceptions lie.

In contracts of suretyship good faith is required.

If, in such contract there is any misrepresentation or concealment as to any
*material* part of the transaction to induce the surety to become a party, it is
void.

But to be *material* it must be some fact or circumstance immediately affecting
the liability of the surety, and bearing directly upon the particular transac-
tion to which the suretyship attaches.

Thus, in regard to the bond given by a cashier, in which was a condition
that he should account for the money and property which had come into
his hands as such cashier, *prior* as well as subsequent to the date of the bond,
the knowledge of the agents of the bank, that the books of the bank had
been badly kept; that bonds had not been given in previous years ; that the
Bank Commissioners had omitted to perform their duties ; that the direct-
ors had been negligent, and the concealment of these facts from the sure-
ties, is not material to the risk assumed, and will not shield them from
responsibility; but a knowledge by such agents of the bank, that at the time
of taking such bond, the cashier was a defaulter, and a concealment thereof
from the sureties, would avoid the bond.

Franklin Bank *v.* Stevens.

Nor can a surety on such bond interpose as a defence against paying for the defaults of the cashier, that the name of *another surety* upon the same bond was obtained by fraud, unless the signature of the latter was a condition by which to obtain that of the former.

ON EXCEPTIONS from *Nisi Prius*, SHEPLEY, C. J., presiding.

This was an action of debt upon a bond purporting to be dated Oct. 1, 1847, and to be signed by Hiram Stevens as principal, and the defendants and one James N. Cooper, since deceased, as sureties.

Proof that the bond was lost was introduced, and a copy duly authenticated was used on the trial. The defendants pleaded "*non est factum.*" An issue was joined thereon.

On the back of the bond was this indorsement, "approved and accepted by vote of directors, Oct. 11, 1847. J. Otis, Pres."

The condition was in these words, "that whereas the above named Hiram Stevens has been appointed cashier of the said Franklin Bank, now if the said Hiram Stevens shall during his continuance in office of cashier aforesaid, truly and faithfully perform and discharge his duties of cashier aforesaid, and shall when he vacates his office aforesaid, a true account make, and all the notes, drafts, moneys and all and every property of every name and nature shall truly and faithfully render and deliver to the directors of said bank, and shall account for all notes, drafts and moneys, drafts, notes and property heretofore intrusted to his hands and possession as cashier of said bank, since he has held the said office of cashier of said bank, then this obligation," &c.

Evidence was introduced of an acceptance of the bond by a majority of the directors.

The defendants contended that the bond was not obligatory upon them, because it was obtained by fraud, and by the suppression and concealment of material facts and circumstances affecting their liability, known to the plaintiffs or their authorized agents, and not known to the defend-

ants, and they produced evidence tending to show that for two or three years prior to the date of this bond, Stevens being cashier, no bonds for the performance of his duties had been taken, and that this was known to the president and some of the directors, before the execution of this bond; that for several years preceding, great irregularity and neglect in doing the business and keeping the books of the bank, had prevailed; that no weekly trial balance or exhibit of the condition of the bank had been kept subsequent to 1842; that notice of this was given to some of the directors; that the bank commissioners had been unable to obtain access to the bank after 1842; that the semi-annual returns made to the governor and council as required by law, were made by the directors without any examination or verification of the truth of them; and, as has since been ascertained, were false at the time.

At a previous term of the Court, auditors had been appointed to ascertain the amount of deficiency in the bank, and the time it occurred, by whose report it appeared that the cashier was a defaulter to the amount of $5822,71, and that the whole of it occurred between Jan. 1st, 1844, and Oct. 1st, 1847.

Proof was offered by defendants tending to show that it was known to the president and some of the directors, before the bond was taken, that there existed a deficiency in the cashier's accounts; and by plaintiffs tending to show that the condition of the books was such, and had been three or four years prior to the date of the bond, that it was difficult to ascertain without laborious investigation, what the condition of the bank was, whether the cashier was a defaulter or not.

The defendants contended, that if the signature of said Cooper to the bond was obtained by fraud and concealment, that it was thereby invalid as against the other sureties, and proposed to give evidence that it was so obtained, but the Judge excluded this testimony.

The defendants offered testimony tending to prove, that

some of the directors by whom the bond was taken, had been guilty of negligence and misconduct in overdrawing their accounts, prior to 1847, and during the period within which the defalcation reported by the directors occurred; and contended that this was a material circumstance which should have been communicated to the sureties.

The presiding Judge instructed the jury, among other instructions not stated, that even if the authorized agents of the bank did know, at the time the bond was taken, that bonds for preceding years had not been taken, or could not be found, they were not bound to communicate it to the sureties, and that the omission of it would be no fraud, and would not render the bond invalid, unless they also knew that there was a deficiency or defalcation on the part of the cashier; and that the jury would not be authorized to find that the bond was obtained by fraud for that cause.

He further instructed the jury, that if the bond was obtained from Cooper by fraud, so that it was inoperative against him, it would not, for that reason, be invalid against the defendants, unless there was evidence that the signatures of the defendants were to be made on condition that Cooper signed it.

The Judge further instructed the jury, that the condition of the bond did not extend to the keeping of the books of the bank, or the cashier's neglect or misconduct in that respect, at any time prior to its date, and that the directors and agents of the bank were not bound to communicate what information they might have on that subject, and that the omission to do it was no fraud on their part.

And he also instructed the jury, that the misconduct of the directors prior to the date of the bond, though it might render them responsible to the stockholders, furnished no defence in this suit, unless it brought home to them knowledge of an existing deficiency on the part of the cashier.

A verdict was returned for plaintiffs, and to these rulings and instructions the defendants excepted.

At a prior term of the Court, another action against Cooper, executor of a deceased surety in this bond, was pending with this in the Court. At a term when the action against Cooper was continued on report of the Judge, an entry was made on the docket that this action should abide the action against Cooper. Subsequently there was a trial in that action, and a verdict and exceptions taken, and the plaintiffs moved to strike out the entry " to abide" under this action. The Judge granted the motion against defendants' objections, and exceptions were taken to that order.

*Evans*, in support of the exceptions, maintained that the docket entry ought not to have been stricken out, and cited *Burgess* v. *Lane*, 3 Greenl. 165; *Smith* v. *Wadleigh*, 17 Maine, 353; *Hatch* v. *Dennis*, 10 Maine, 244; *Billington* v. *Sprague*, 22 Maine, 34; *Coburn* v. *Whiteley*, 8 Met. 272; *Witherell* v. *Ocean Ins. Co.*, 24 Pick. 68.

The defendants ought not to have been required to plead until the exceptions were disposed of. c. 236, § 8 of Acts of 1852.

But the instructions given were objectionable on two grounds.

1. They decided as matter of law, what should have been submitted to the jury as matter of fact.

2. They were erroneous in themselves.

1. What was or was not material to be known to defendants, was a question for the jury. The true test of materiality is, would the sureties have entered *into* the contract if they had been apprised of all the circumstances of the case? And this is of necessity a question for the jury.

Questions of concealment, and the effects of it, arise oftener in cases of insurance, than elsewhere, and authorities may be found there. *Burrett* v. *Saratoga Ins. Co.*, 5 Hill. 192; *Grant* v. *Howard Ins. Co.*, 5 Hill, 15; *Howard* v. *N. E. Ins. Co.*, 2 Mason, 222.

The instructions were too stringent, calling for actual knowledge of defalcation.

2. The instructions were erroneous. The facts, if communicated, might have had, and doubtless would have had great influence upon the minds of the sureties.

3. The exclusion of the testimony, that the signature of Cooper was obtained by fraud, and the instruction on that head were erroneous. The bond was joint, not several. Whenever, by the act of the obligee, one, in a joint obligation is discharged, all are discharged. In legal contemplation the bond was executed by all at the same time. There was no occasion and no opportunity for conditional stipulations.

*Paine, contra.*

RICE, J. — This case is presented on two bills of exceptions. The first bill was filed and allowed at the August Term of the Court, in 1854. The complaint in this bill is, that the words " to abide," which had been entered upon the docket, under this action, at some preceding term, were, on motion of the plaintiffs, stricken off by order of the presiding Judge..

Entries made upon court dockets by consent of parties, under the direction of the Court, merely to facilitate business, are subject to the direction of the Court. They are designed to relieve parties from unnecessary inconvenience and costs, and to promote the despatch of public business. Of this character are the entries " to become nonsuit," " to be defaulted," " to continue," " to await," " to abide," and the like. Such entries will always be observed by the Court, and ordinarily enforced according to their terms. But when it becomes manifest to the Court that they have been made under a misapprehension of facts, or, when by a change of circumstances the rights of parties would be sacrificed by a rigid enforcement of such orders, and justice thereby defeated, the Court may properly discharge or modify them. Such entries are under the control of the Court, to be determined as matter of discretion, upon the peculiar circumstances of each case. To the exercise of that discretion

exceptions do not lie.　These exceptions must therefore be dismissed.

As to the second bill of exceptions; the defence was placed upon the ground that the bond was void, because it was obtained from the defendants by fraud, and by the suppression and concealment of material facts and circumstances affecting their liability, known to the plaintiffs, or their authorized officers and agents, and not known to the defendants.

There was evidence tending to prove that there had been great irregularity in keeping the books of the bank, by the cashier; that for two or three years before the bond in suit was executed, in which Hiram Stevens was cashier, no bonds for the faithful performance of his duties had been taken; that during the years in which the cashier was subsequently found to have been a defaulter to the bank, some of the directors had been guilty of negligence and misconduct in overdrawing their accounts, and that other irregularities existed in conducting the business of the bank.

The Judge instructed the jury that even if the authorized agents of the bank did know at the time the bond was taken, that bonds for preceding years had not been taken, or could not be found, they were not bound to communicate it to the sureties and that the omission of it would be no fraud, would not render the bond invalid, unless they also knew there was a deficiency or defalcation on the part of the cashier, and that the jury would not be authorized to find the bond obtained by fraud for that cause; that the condition of the bond did not extend to the keeping of the books of the bank, or the cashier's neglect or omission in that respect, at any time prior to its date, and that the directors and agents of the bank were not bound to communicate what information they might have on that subject, and that the omission to do it was no fraud on their part; and that the misconduct of the directors prior to the date of the bond, though it might render them liable to the stockholders, furnished no defence in this suit, unless it brought home to

them knowledge of an existing deficiency on the part of the cashier.

In contracts of suretyship good faith is to be observed. If there be any misrepresentation or concealment in relation to any material part of the transaction, to induce the surety to enter into the obligation, the contract will be void. Thus, if a principal, knowing that he had been cheated by an agent, should apply for security for the good conduct of the agent, and conceal such fact, and any one in ignorance thereof should become surety for the agent, it would be void. *Maltby's case,* 1 Dow. Parl. Cases, 294.

In the case of *Jackson* v. *Duchaire,* 3 T. R., 552, where a widow in straitened circumstances, took a house upon terms that she was to take the furniture of the preceding tenant, at a valuation, provided she could raise the money within a given time, and a third party came forward upon the understanding that the price to be paid by her for the furniture had been settled at £70, and became responsible for the payment of that amount, but it afterwards appeared that there had been a secret understanding between the widow and the parties, that the real price was to be £100, and that the widow had given two promissory notes to secure the payment of the additional £30, the existence of which, as well as the underhand agreement, had been kept back from the third party; it was held that the transaction was a gross fraud upon the latter, and that the plaintiff could not recover for that reason.

In the case of *Pidlock* v. *Bishop,* 5 D. & R. 509, and in *Stone* v. *Compton,* 5 Bing. N. C. 142, the same principle was fully recognized.

It is more difficult to determine what will constitute a material part of a transaction, in relation to which misrepresentation or concealment will be deemed fraudulent. It is apparent that to be thus material, it must be some fact or circumstance immediately affecting the liability of the surety, and bearing directly upon the particular transaction to which the suretyship attaches. There are many facts

and circumstances which may indirectly affect the liability of the surety, such as the skill, or want of it; the industry, or indolence; the care, or negligence; the wealth or poverty of the party for whose faithfulness or responsibility a surety is sought, to which this rule will not apply. Such facts and circumstances are too remote to constitute elements to be deemed material in transactions of this kind, unless they are made such by particular inquiry and distinct representation. The effects which result from such personal qualities are matters for which the surety ordinarily assumes the responsibility.

It is the province of the Court to determine the competency of testimony, and the jury to determine its weight.

The bond in suit contains this provision, in addition to those ordinarily incorporated in cashiers' bonds; "and shall account for all notes, drafts and moneys, drafts, notes and property heretofore intrusted to his hands and possession as cashier of said bank, since he has held the said office of cashier of said bank." This provision does not render the sureties liable for the unskillful or negligent manner in which the books of the bank had been kept, nor for the negligence of the directors, nor the acts of the bank commissioners. It simply stipulates that the cashier shall account for the property of the bank, which had before that time been intrusted to his hands. Whether the property or any portion of it had been lost by the cashier, and if so, whether the officers of the bank had knowledge of that fact, were material facts, which had a direct bearing upon the liability of the sureties. Upon this point the instructions are distinct and accurate.

So too as to the existence of former bonds. The existence or non-existence of such bonds can have no effect upon the defendants' liability. If such bonds were in existence, the sureties in this could not compel the bank to resort to them. They did not stipulate to become liable in case former bonds were found insufficient. But they undertook absolutely that the cashier should account for the funds in

his hands.   The terms of the contract clearly indicate the character and extent of the liability.

The jury were also instructed that if the bond was obtained from Cooper (a co-surety) by fraud, so that it was inoperative against him, it would not for that reason be invalid against the defendants, unless there was evidence that the signatures of the defendants were to be made on condition that Cooper had or should sign.   It is contended that this intimation is erroneous.

In the case of *Keyser* v. *Keene,* 17 Penn. State R., (5 Harris,) 327, a bond had been prepared for six persons to sign, and contained a declaration that the obligee had become surety for another, on the agreement of the six to indemnify him, but the bond was executed by five only.   Held that the bond being delivered, was obligatory on those by whom it was executed.

In the case of *Martin* v. *Stribbling,* 1 Spears, (S. C. R.,) 23, it was held that it is no discharge of a surety that he expected a third person would also sign as surety, and that such third person would receive from the principal certain books and papers as an indemnity for the suretyship, unless it is shown that the surety stipulated that the paper should not have effect until one or both those things were done ; or that the signature of the surety was obtained by means of fraudulent representations, that such third person would sign the notes, and that the principal would place in his hands his books and papers, to be by him collected and applied in payment of the debt.

There was no evidence that the execution of the bond by the defendants in any way depended upon the fact that Cooper should also sign, or that any representations were made to them in relation to the fact, whether Cooper would or would not sign.

Many cases illustrating the law of insurance were cited at the argument, by counsel for the defendants.   Though the two classes of cases may be in some respects analagous, yet they are not sufficiently so to render the *dicta* of Judges, or

the rules adopted by courts in one class, authority in the other. No error is perceived in the instructions given, or other proceedings at the trial.

*Exceptions overruled, and judgment for*
*the amount reported by the auditors.*

TENNEY, J., was unable to attend at the hearing, and took no part in the opinion.