———————o———————

## HAM *v.* GREVE and Others.

PLEADING.—*Fraud.*—Fraud cannot be pleaded without stating the facts constituting it.

PRINCIPAL AND SURETY.—Where one is about to take a note, with surety, from a person whom he knows to be insolvent, the mere fact that the creditor does not, voluntarily and without solicitation, announce to the proposed surety the insolvency of the principal, will not release the surety.

SAME.—*Misapplication of Promissory Note.*—Where one is induced to sign a note as surety, by the representation, made to him for the purpose of so inducing him by the payee, that the note is to be used in payment for goods to be furnished by the payee to the maker, and the note is used to pay a pre-existing debt of the maker to the payee, the person so signing is not bound as surety.

SAME.—*Pleading.*—*Evidence.*—Suit on a promissory note by the payee. Answer by surety, that prior to the execution of the note, the maker was the proprietor of a retail furniture store, which, including the stock, had been sold to him by this defendant, to whom the maker was indebted therefor in a certain sum, and that it had been agreed between said maker and this defendant that the latter should hold a lien on said stock and all additions thereto, to secure said indebtedness, and that said maker was to execute a mortgage on the same for that purpose; that the payee, who was a wholesale furniture dealer in the same place, knew of said indebtedness, and, intending to deceive this defendant and induce him to sign the note as surety, represented to him that said maker was doing a good business and getting along well, but needed more stock, and that

the payee would furnish him some more goods, if this defendant would become surety on his note for the same; that this defendant, relying on said statements, and in consideration of the fact that said goods were to be added to the stock, thus augmenting his security, became surety on said note, believing at the time that the note was given for goods furnished by the payee to the maker as aforesaid, whereas the payee did not furnish the maker any goods, but the whole consideration of the note on the part of the maker was a prior indebtedness of the maker to the payee, of which fact the surety was at the time ignorant; that the maker was at the time insolvent, and was not prospering in his business, as the payee well knew; that the maker had never paid his indebtedness to the surety, who never received any consideration for his signature to the note.

*Held,* that the allegations as to said indebtedness of the maker to the surety, and the agreement between them as to the lien and the execution of a mortgage, did not add anything to the legal effect of the other matters stated, and there was therefore no error in refusing to admit under this answer evidence in relation to the agreement to execute the mortgage.

*Held,* also, that evidence as to the insolvency of the maker, at the time of the interview between the payee and the surety and the execution of the note, was not admissible under this answer.

*Held,* also, that the facts set forth by the answer were sufficient to release the surety.

*Held,* also, that if at the time the surety signed the note he was told by the maker that it was to be used in payment of a prior debt of the maker to the payee, and if it was so used, then the surety would be liable, notwithstanding the payee had represented to the surety that it was to be used in payment for goods, as alleged in said answer.

APPEAL from the Wayne Common Pleas.

WORDEN, J.—Suit on the following note:

"$418.                    LOUISVILLE, KY., June 12th, 1867.

"Sixty days after date, we promise to pay to the order of Greve, Buhrlage & Co. four hundred and eighteen dollars, without defalcation, value received; negotiable and payable at the office of the Western Insurance Company in Louisville, Ky.                    JAMES G. MCNETT,

JASON HAM, security."

The defendant Ham pleaded: First. Payment. Second. Want of consideration. Third. That his signature to the note was obtained by the fraud of the plaintiffs, without showing the circumstances. Fourth. That prior to the execution of the note McNett was the proprietor of a retail furniture store in Louisville, Ky., which, including the stock, had been

sold to him by said Ham, for which McNett owed him the sum of twenty-five hundred dollars; and that it had been agreed between said McNett and Ham that the latter should hold a lien on said stock and all additions thereto to secure said indebtedness, and that McNett was to execute a mortgage on the same for that purpose; that the plaintiffs, who were wholesale furniture dealers in the same place, knew of the indebtedness of McNett to the defendant, and, intending to deceive the defendant and induce him to sign the note as security, represented to him that McNett was doing a good business and was getting along well, but that he needed more stock, and that the plaintiffs would furnish him some more goods if the defendant would become security on his note for the same; that the defendant, relying upon said statements, and in consideration of the fact that the goods so to be furnished were to be added to the stock, thus augmenting his security, agreed that he would become surety on such note, and therefore he placed his name upon said note as such surety, believing at the time that the note was given for the price of goods furnished by the plaintiffs to McNett as aforesaid; whereas the plaintiffs did not furnish to McNett any goods, but the whole consideration of the note on the part of McNett was a prior indebtedness of McNett to the plaintiffs on a note which had been protested for non-payment, of which fact the defendant was at the time ignorant; and McNett was at the time insolvent, and was not prospering in his business, as the plaintiffs then well knew. Said McNett has never paid his indebtedness to the defendant, and defendant never received any consideration for his signature to the note.

Fifth. That he signed the note merely as surety to said McNett, who was the principal therein, and at the time of the execution of said note the said McNett was wholly insolvent, which fact was well known to the plaintiffs, but was not known to the defendant; and the said plaintiffs then and there fraudulently concealed the fact of said insolvency from the defendant, and induced him to sign the said note, and he

has never received any consideration whatever for such signature.

A demurrer was sustained to the third and fifth paragraphs of the answer, and exceptions were taken. Reply in denial of the first, second, and fourth paragraphs; also a reply denying all fraud charged in the fourth.

Trial of the issues by a jury; verdict and judgment for the plaintiffs, a new trial being asked for and denied.

Error is assigned upon the ruling on the demurrers. The ruling on the demurrer to the third paragraph of the answer was very clearly right. That paragraph set up fraud in obtaining the defendant's signature to the note, without stating in any manner in what the fraud consisted. That such pleading is bad, has been decided so often by this court, that to cite the cases would extend this opinion into needless prolixity.

The fifth paragraph raises a more debatable question, but we are of opinion that that also was bad, and the demurrer to it correctly sustained. The substance of that paragraph is, that at the time the note was given, McNett was insolvent, which fact was unknown to the defendant, but was known by the plaintiffs, and by them concealed from the defendant. The pleading says it was *fraudulently* concealed, but it states no fact of which fraud is predicable. It does not appear that the plaintiffs knew that the defendant was ignorant of McNett's insolvency; and unless the simple fact that the plaintiffs knew he was insolvent made it their duty to communicate that fact to the defendant, they had the right to remain silent; and the charge of fraudulent concealment, without any statement of circumstances that made it their duty to disclose the fact to the defendant, does not add anything to the statement.

We think the real question presented by this paragraph may be stated thus: Is it the duty of a person about to take a note, with surety, from one whom he knows to be insolvent, to disclose the fact of such insolvency to the proposed surety? and in default of such disclosure, will the contract of the surety be void? We are of opinion that this

Ham *v.* Greve and Others.

question must be answered in the negative. The creditor in such case may suppose that the proposed surety is as well advised of the pecuniary condition of the principal as he is himself, and knowing his condition, is willing to help him by becoming his surety. Undoubtedly, if the proposed surety should apply to the creditor for information as to the responsibility or solvency of the principal, it would be the duty of the creditor to give him all the information he possessed on that subject, and if he should withhold any fact within his knowledge, material to the risk to be assumed by the surety, the latter would not be bound. But the creditor is not bound in such case to volunteer his information unsolicited and uncalled for. It is said, that "any concealment of material facts, or any express or implied misrepresentation of such facts, or any undue advantage taken of the surety by the creditor, either by surprise or by withholding proper information, will undoubtedly furnish a sufficient ground to invalidate the contract." 1 Story Eq. § 324. The fact of the insolvency of the principal cannot be said to be *concealed* by the creditor, unless he is called upon by the surety, or by the circumstances of the transaction, to make the disclosure, and he fails to do so. His silence is no fraud unless the proposed surety or the nature of the transaction calls upon him to speak. The author just quoted, in § 325 *a*, says, "It is now regarded as settled that there must be something which amounts to fraud, to enable the surety to say that he is released from his contract on account of misrepresentation or concealment."

Circumstances might exist that would make it the duty of the creditor to disclose his knowledge of the principal's pecuniary condition, though not called upon to do so by the surety; but no such circumstances are alleged in the paragraph in question.

We pass to other questions arising in the record.

On the trial of the cause, while the defendant Ham was on the stand as a witness in his own behalf, his counsel offered to prove by him, "that prior to the execution of the note in

suit, and prior to the interview between him and the plaintiff Greve, as related by him, the defendant McNett was indebted to him in the sum of twenty-five hundred dollars, and had agreed, after the creation of said debt, to execute to him as security therefor, a mortgage of all his stock of furniture then on hands, and of such additions thereto as should from time to time be made; which agreement was in force, and said indebtedness unpaid, at the time of said interview and at the time of the signing of said note ," but the court, on objection being made, excluded the evidence as to the agreement to execute a mortgage, and admitted it as to the indebtedness.

On the further trial of the cause, the defendant Ham propounded to McNett, who was on the stand testifying as a witness, the following question: "At the time of the interview between Ham and Greve, and at the time of the execution of this note, what was your condition as to solvency or insolvency?" But the court sustained an objection to the question. The defendant further offered to prove by McNett, that at the time of the execution of the note, he was insolvent, and that his whole stock in trade was taken, within six weeks thereafter, on attachment, for debts created before the execution of the note, to more than the value of the whole stock; but objection being made to the evidence, it was excluded.

The court gave to the jury the following charges, to which the defendant excepted.

" 1.   This suit is brought on a note signed by Jason Ham as security for James G. McNett.   Ham is liable on the note, and a verdict should be returned against him, unless he shows, by a fair preponderance of evidence, that he was induced to sign the same by the false and fraudulent representations of the plaintiffs."

" 2.   If the jury believe from the evidence that the plaintiffs, in a conversation with Ham, prior to the execution of the note sued on, said to Ham that McNett was doing a good business and was getting along well, but that he needed

some more stock, and that they would furnish him some more goods if the defendant would become security on McNett's note for the same; and if the jury believe that said Ham, relying on said representations, afterwards signed the note sued on; and if the jury further believe from the evidence that the plaintiffs afterwards refused to let McNett have furniture on said note, but kept the note and applied it in payment of a pre-existent debt due from McNett to the plaintiffs, then the jury should return a verdict in favor of the defendant."

"3. If the jury believe, from the evidence, that McNett told Ham at the time he signed the note sued on, that the same was to be used in payment of a debt that McNett then owed the plaintiffs, then Ham is liable, though the jury believe, from the evidence, that the plaintiffs made the representations alleged, if they also believe from the evidence that said note was received by the plaintiffs in satisfaction of a pre-existing debt of McNett."

The defendant asked, but the court refused, the following instructions:

"1. If the plaintiffs or either of them, before the execution of the note, were notified that McNett was indebted to Ham, and that they or either of them, with intent to induce Ham to sign this note from McNett to them, represented to Ham that McNett was doing well in business, but that he needed more stock to enable him to carry on business successfully, and that they would furnish more stock if Ham would go on his paper as security, and if Ham then agreed to sign a note as security for the stock so to be furnished, and if Ham did shortly afterwards, relying upon said representations, sign the note sued on as security for McNett; and if the jury believe from the evidence that Ham was justified from said representations in believing that he was signing said note as security for goods furnished to McNett, and if he had no knowledge that said note was given for a pre-existing debt of McNett, and if, in fact, no goods were so furnished to McNett by plaintiffs, but that the only consideration of said

note was a pre-existing debt of McNett, then and in that case, the plaintiffs cannot recover against Ham on said note."

"2. If before the signing of the note by Ham, the plaintiffs, with intent to induce him to sign it, represented to him that McNett was solvent, and was doing well in business, and if Ham was ignorant of the fact, and relied upon such representations, and signed the note, and if, in fact, McNett was at the time insolvent and in failing circumstances, and was known to be so by the plaintiffs, then the plaintiffs could not recover, as against Ham, on said note."

Whether or not error was committed in the exclusion of the evidence offered, or in giving or refusing the charges given and refused, must depend upon the legal effect of the fourth paragraph of the answer. That paragraph states, as we think, two grounds, and only two, which, if established, entitle the defendant to be discharged. First. It is alleged that the plaintiffs, "intending to deceive the defendant, and induce him to sign the note as surety, represented to him that McNett was *doing a good business, and getting along well,*" &c.; whereas he was at the time *not prospering in his business,* as the plaintiffs well knew. Second. That the defendant signed the note upon the understanding that it was for goods to be furnished by the plaintiffs to McNett, but that it was applied to the payment of a prior debt which McNett owed the plaintiffs. These are the substantial allegations of the pleading, and the residue might have been stricken out as surplusage.

The statements of the indebtedness of McNett to the defendant Ham, and the agreement between them as to the lien and the execution of a mortgage to secure the indebtedness, do not add anything to the legal effect of the other matters stated. They may be good reasons why Ham should feel justified in claiming the right of being discharged on the ground of the alleged misapplication of the note; but that right he would have without any such indebtedness or agreement. "If, in the contract between the principal debtor and the creditor, there is a departure from that which the surety

stipulated for when he entered into the obligation, the surety will be released." White & T. Lead. Cas. 533 (3d Am. ed.), and authorities there cited. Where a person gave a promissory note as a surety, upon an agreement that the amount should be advanced to the principal debtor by *draft at three months date*, and the creditor, without the concurrence of the surety, *paid the amount at once*, instead of giving the draft, it was held that the agreement had been varied, and that the surety was discharged. *Id.* 534. So in the case of *Stone* v. *Compton*, 5 Bing. N. C. 142, the recital in the mortgage led the surety to suppose that the whole sum secured was advanced to the principal, and he was not informed to the contrary, and a part only was thus advanced, and the residue applied to a pre-existing debt; it was held that the surety was discharged. There can be no doubt that the alleged misapplication of the note, if established, would discharge Ham, without any reference to the indebtedness of McNett to him, or any agreement between them as to security therefor; and such seems to have been the view of counsel below, inasmuch as a special replication was filed to the fourth paragraph of the answer, denying simply the fraud charged therein, which was unchallenged by demurrer or otherwise.

If we are right in these views, it follows that the court committed no error in excluding the testimony as to the agreement to execute the mortgage, because it was a matter not material to the issues, and not necessary to be proved in order to make out the defense. Where immaterial matter is alleged in a pleading, with that which is material, it does not follow that, because it is alleged, it must, or can, be proved.

We are of opinion, also, that no error was committed by the court in excluding the evidence of the insolvency of McNett at the time of the execution of the note, &c., as offered. This was rightly excluded, because the allegations of the answer are not broad enough to admit it. His solvency or insolvency had nothing to do with the case, unless the plaintiffs made some representations to Ham on that subject.

It is alleged on this subject, in the answer, that the plain-

tiffs represented to Ham that "McNett was doing a good business and getting along well." This is not equivalent to a representation that he was solvent. We conceive it to be quite possible, and indeed quite common, for men who are utterly insolvent, and unable to pay a tithe of their debts, to be doing a good business, and to be getting along well. By doing a good business and getting along well, insolvent men are sometimes enabled to make themselves solvent, and to pay all their debts. The representation had reference to the business of McNett and his success at the time, and nothing more. The answer negatives this representation by saying that McNett was not prospering in his business; it alleges also that he was insolvent, but in the absence of any representation on that subject, the allegation is totally immaterial, and the proof offered to sustain it was correctly rejected.

We come to the instructions. Objection is made to the first given by the court, because it is too narrow and does not embrace the whole subject in issue. Standing alone, it might be objectionable, but in connection with the second, the objection loses its force. The two together embrace the substance of the whole case, and put it fully and fairly before the jury. The case, moreover, went to the jury on the theory that proof of the facts sought to be established by the rejected evidence was not necessary to the defense.

The third charge given we think was right. If Ham was told by McNett at the time of the execution of the note that it was to be used in payment of a pre-existing debt of McNett to the plaintiffs, he had no right to suppose that it was executed for the purpose of securing the plaintiffs for goods to be by them, in the future, furnished to McNett. Upon being thus told the object and purpose of the note by him whose surety Ham was about to become, he might well suppose that any previous arrangement for furnishing goods and securing the pay therefor had been abandoned, or if not abandoned, that the note in question was not executed in pursuance thereof.

As to the charges asked by the defendant and refused, we

may observe that the first was in substance embraced in the second charge given, and therefore no error was committed in refusing it.

The second change asked and refused was correctly refused, for the same reason that evidence of the insolvency of McNett was properly rejected.

By the charge asked, the defendant sought to avail himself of a supposed representation by the plaintiffs of the solvency of McNett, no such representations being alleged, as we have seen, in the pleading.

What we have said disposes of all the questions raised in the cause. We find no error in the record.

The judgment below is affirmed, with costs.

*C. H. Burchenal,* for appellant.

