EDWIN HARRISON, Respondent, *v.* LUMBERMEN AND MECHANICS' INSURANCE COMPANY, Appellant.

November 11, 1879.

1. Where the relations of the obligee and the surety are such that the latter has a right to expect that all the material facts which directly affect his liability as surety will be disclosed by the former, the concealment of such facts, whatever the motive, is a fraud upon the surety.

2. That the surety is a director of the corporation obligee does not imply any laches on his part in not inquiring as to the particular facts concealed, no ground for suspicion appearing.

3. The knowledge of the president is the knowledge of the corporation.

APPEAL from the St. Louis Circuit Court.

*Affirmed.*

OVERALL & JUDSON, for the appellant : It is not the duty of one receiving security from his employee or debtor to disclose to the surety every fact that materially increases the risk ; his duty in such case is not analogous to that of assured to the underwriter. — *Hamilton* v. *Watson*, 12 Cl. & Fin. 119 ; *Insurance Co.* v. *Lloyd*, 10 Exch. 523 ; *Magee* v. *Insurance Co.*, 92 U. S. 93 ; *Bank* v. *Stevens*, 39 Me. 532 ; *The State* v. *Atherton*, 40 Mo. 209. Mere non-disclosure of past misconduct, known to the obligee and unknown to the surety, no inquiry being made by the surety, is not fraudulent in any sense. — *Ætna Ins. Co.* v. *Mabbett*, 18 Wis. 667 ; *Ham* v. *Greve*, 34 Ind. 48 ; *Etting* v. *Bank*, 11 Wheat. 59 ; *Roper* v. *Trustees*, 9 Cent. L. J. 226 ; *The State* v. *Dunn*, 11 La. An. 549. The knowledge of the president was not sufficient to charge the corporation with fraudulent concealment. — *Wayne* v. *Bank*, 52 Pa. St. 343. The defendant, being a director, was bound to know the facts alleged to have been fraudulently concealed from him. — *Bank* v. *Cooper*, 39 Me. 546 ; *Bank* v. *Root*, 2 Mass. 552.

CLINE, JAMISON & DAY, for the respondent : It was the duty of defendant to disclose to the surety every fact that materially increased his risk, or that was calculated to prevent a prudent man from undertaking the obligation. — 1 Story's Eq. Jur. 219, sect. 215 ; *Pidcock* v. *Bishop*, 3 Barn. & Cress. 605 ; *Owen* v. *Homan*, 3 Eng. Law. & Eq. 121 ; 4 H. L. Cas. 997 ; *Squire* v. *Whitton*, 1 H. L. Cas. 333 ; *Railton* v. *Matthews*, 10 Cl. & Fin. 935 ; *Hamilton* v. *Watson*, 12 Cl. & Fin. 119 ; *North British Ins. Co.* v. *Lloyd*, 28 Eng. Law & Eq. 456 ; 10 Exch. 523 ; *Evans* v. *Keeland*, 9 Ala. 42 ; *Leith Banking Co.* v. *Bell*,

8 Sh∲w. & D. 721; *Crew's Case*, 7 De G. M. & G. 43. When a party, knowing himself to be cheated by his clerk, requires security under such circumstances as to hold the clerk out to others as a trustworthy person, and another becomes his surety, acting under the impression that he is so considered by his employer, the contract of suretyship will be void.—*Mathley's Case* (cited in 1 Dow. Parl. Cas. 249), 11 Wheat. 68, note *d; Smith* v. *Bank*, 1 Dow's Parl. Cas. 272; *Etting* v. *Bank*, 11 Wheat. 59; *Bank* v. *Cooper*, 36 Me. 195; *Sooy* v. *The State*, 39 N. J. L. 135.

HAYDEN, J., delivered the opinion of the court.

The case was referred, and the referee reported the material facts, in substance as follows: The plaintiff was a stockholder in the defendant company, and from 1872 until 1876, a director. One Bull had for several years before 1873 been secretary of the company, and as such he received the moneys of the company, which were also disbursed through him upon order of the proper officer. In the fall or early winter of 1873, Bull became a defaulter in his accounts with the company. Mr. Pritchard was at this time president of the company, and continued such until May, 1876. On the defalcation becoming known to Pritchard, he and the vice-president, for the company, accepted in satisfaction a note which was secured by a deed of trust given by the mother of Bull upon her real estate, which note was finally paid in 1877. Bull continued to act as secretary of the company until June, 1877, his conversion of the company's funds having been disclosed to no one or its officers except the president and vice-president.

The present suit is for the recovery of two dividends declared on capital stock; and in its answer the defendant set up that Bull was employed by the defendant as its secretary on May 6, 1876, and that in August, 1876, the plaintiff became a surety on the bond of Bull, conditioned for the

future faithful discharge of his duties as secretary, and payment to the proper person of all moneys, etc. The answer then avers a breach of the bond in respect to the conversion and failure to pay moneys on the part of Bull. To this counter-claim the plea is, that the defendant fraudulently concealed from the plaintiff the first embezzlement, and that if the plaintiff had known of it he would not have signed the bond ; and such the referee found to be the facts.

The defendant claims there was error in the referee's legal conclusion, which was confirmed by the court below, that the defendant's failure to give plaintiff notice of the first conversion of the funds of the company rendered the bond void as against the plaintiff, and discharged the latter. It is denied that the mere non-disclosure of past misconduct known to the obligee, but unknown to, and not inquired into by the surety, is fraudulent in any sense.

The rule in regard to the obligation of disclosure on the part of the creditor, or obligee, of facts affecting the risk of the surety, but unknown to him, is sometimes laid down, even in judicial opinions, in very unqualified terms. It is often taken for granted that no distinction exists between the non-disclosure of material facts by a creditor and by an insurer. See 1 Story's Eq. Jur., sects. 215, 216. But, as was observed in an English case decided by judges of high authority, the contract of insurance is peculiar, and rests largely on mercantile usage. *North British Ins. Co.* v. *Lloyd*, 10 Exch. 531. Still, the two contracts seem to have this in common : that intent to deceive by suppression of a material fact is not essential to the avoidance of the contract. But they are distinguished in this : that no element of trust or confidence reposed, necessarily or from the course of business, arises between creditor and surety, — the two, as often happens, dealing at arm's length. If the facts of the decided cases were considered, it will be found that they fall far short of sustaining the doctrine as it is often expressed. Though passages not infrequently occur

in the books which apparently support the statement that the duty of the obligee is to disclose to the surety every fact that materially affects the latter's risk, or that is of a nature to prevent a prudent man from undertaking the obligation, such certainly is not the rule. On the other hand, the decided cases, both American and English, to which the defendant appeals as exploding the general rule which would be necessary to maintain the plaintiff's case, indicate only a refusal to accept such unqualified doctrine as the above. *Franklin Bank* v. *Stevens*, 39 Me. 532; *Ætna, etc., Ins. Co.* v. *Mabbett*, 18 Wis. 667; *Ham* v. *Greve*, 34 Ind. 18; *The State* v. *Dunn*, 11 La. An. 549; *Magee* v. *Manhattan, etc., Co.*, 92 U. S. 93; *Evans* v. *Keeland*, 9 Ala. 42; *North British Ins. Co.* v. *Lloyd, supra; Hamilton* v. *Watson*, 12 Cl. & Fin. 119; *Pidcock* v. *Bishop*, 3 Barn. & Cress. 605; *Phillips* v. *Foxall*, L. R. 7 Q. B. 666.

If the circumstances are such that it can be fairly inferred that the surety reposed confidence in the obligee, and the latter suffered the former to deal under a material delusion; or if obligee and surety were brought into such connection with each other as to make the concealment equivalent to an assertion, on the part of the obligee, of the non-existence of the facts concealed, the contract of suretyship would be avoided. But, as said in *Franklin Bank* v. *Stevens, supra*, the facts concealed must be those immediately affecting the liability of the surety, and bearing directly on the particular transaction to which the suretyship attaches. The failure to disclose need not be wilful or intentional on the part of the obligee, or with a view to his advantage (*Railton* v. *Matthews*, 10 Cl. & Fin. 934; *Sooy* v. *The State*, 39 N. J. L. 135), but his act must be such as to have operated as a fraud on the surety. Hence the plea of fraud, since the facts are fraud in law.

The application of these principles will determine the present case. The motive of the company was unimpor-

tant. The company failed to disclose a material fact which directly affected the liability of the surety, which fact it was the duty of the company to disclose. The relation of the obligee and surety was such that the surety had a right to expect that the obligee would disclose the material fact. The defendant here virtually gave the plaintiff to understand that, so far as the defendant knew, Bull was a trustworthy officer; while the fact was, as the defendant knew, that Bull had not only converted moneys of the company to his own use, but was, when the bond was taken, in default to the company on account of the former conversion. These facts bring the case within the now established rule, as it may be considered, enunciated in *Smith* v. *Bank of Scotland*, 1 Dow, 287; *Franklin Bank* v. *Cooper*, 36 Me. 196; and *Sooy* v. *The State, supra*. The first and second of the cases appear to have been of obligations to cover past as well as future delinquencies; but no stress is laid on this fact, and in the recent case of *Phillips* v. *Foxall, supra* (which may be considered as overruling *North British Insurance Company* v. *Lloyd, supra*, so far as the latter holds that intent to deceive is necessary on the part of the creditor), the majority of the Queen's Bench held that in a case of continuing guaranty the obligation of disclosure existed, while all the judges agreed that if the default had taken place before the surety contracted, the concealment would have furnished evidence to avoid the contract. It is argued that the company did not know of the defalcation when the bond was taken. But the knowledge of the officers was the knowledge of the company; and the company, in 1876, did not cease to possess the knowledge because Pritchard was no longer president. Equally groundless is the objection that because the two officers chose carefully to conceal the defalcation, and to allow the conversion to be atoned for as an ordinary debt, the nature of the defaulter's act is changed. The referee properly found that the act was an embezzlement of the company's

funds, and the evidence justifies his refusal to conceal the true nature of the act under the term " shortage," or any similar euphemism. The fact that the plaintiff was a director does not imply any laches on his part in not inquiring and finding that there was a defalcation on the part of Bull. It does not appear there was any ground of suspicion, or anything to put the plaintiff upon inquiry.

The conclusion of the referee that the defendant's failure to give the plaintiff notice of the fraudulent conversion rendered the bond void, was correct, and the judgment in accordance therewith will be affirmed. All the judges concur.