134 So.2d 536 (1961)
Dallas A. LAMBERT, Appellant,
v.
Wendell C. HEATON and United Bonding Insurance Company, a foreign corporation, Appellees.
No. C-390.
District Court of Appeal of Florida. First District.
November 14, 1961.
*537 Truett & Watkins, Tallahassee, for appellant.
Jim L. Dye, S. Gunter Toney, and James J. Richardson, of Moore & Henderson, Tallahassee, for appellees.
STURGIS, Judge.
On September 3, 1960, the appellant, Dallas A. Lambert, who was plaintiff below, recovered a summary final judgment in an action at law against United Bonding Insurance Company, a corporation, the appellee, and its codefendant, Wendell C. Heaton, for the unpaid balance of a promissory note in plaintiff's favor executed by said Heaton, the payment of which was guaranteed by a performance bond executed by said Heaton as principal and purported to be executed by the appellee, hereinafter called the "bonding company", as surety. On December 13, 1960, the bonding company filed a motion under Section 55.38, Florida Statutes 1959, F.S.A., to stay execution upon said judgment, and the trial court, after taking extensive testimony thereon, found that the plaintiff-payee of the note exacted usurious interest on the principal of the note sued on in an amount constituting a crime under Section 687.07, Florida Statutes 1959, F.S.A., and on that basis granted the motion. This appeal is to review the order entered in the premises.
Plaintiff-appellant assails the order on two grounds: (1) That the defendant-appellee, an original party to this cause, had notice of the criminal usury involved in the transaction but failed to affirmatively assert the same as a defense to the action as required by the rules of procedure, and is thus precluded from asserting usury as a ground for stay of execution on the judgment. (2) That the evidence before the court on the motion to stay execution is insufficient to establish the criminal usury asserted in support thereof.
The court found and the evidence reflects that the sole consideration for the promissory note in suit was $25,000 loaned or advanced by plaintiff to Heaton on March 24, 1959, for which he executed and delivered to plaintiff the note in suit for the face amount of $30,000 due six months after March 24, 1959; that plaintiff sought by this suit to enforce said note according to the terms on the face thereof; that the bond of the defendant-appellee sought to be enforced in this cause secured the payment of said note according to its terms; that the transactions in which plaintiff Lambert and defendant Heaton knowingly, wilfully, and intentionally engaged, constituted a lending of money in this state and a wilful charging of an additional sum to the principal sum loaned in excess of 25% per annum on said principal sum, which *538 transaction falls within the denunciation of Section 687.07, Florida Statutes 1959, F.S.A.; that the defendant bonding company did not have any knowledge or notice of the usurious nature of said transaction, except such as may be imputed to it by the notice of its resident vice president, defendant Heaton (he being also the statutory resident agent of the bonding company for the purpose of service of process in Florida to bind the bonding company): that Heaton never communicated or brought such information to the attention of the bonding company or any officer or agent thereof; that said Heaton, as statutory resident agent of the bonding company, on whom the summons in this cause was served through the office of the State Treasurer, undertook through the law firm of Heaton and Dye, of which defendant Heaton was then a partner, to represent the defendant bonding company in this cause; that said attorney or attorneys appeared for and filed pleadings in said cause on behalf of said bonding company, but never advised any other officer or agent of the company of the pendency of the suit or that judgment had been rendered against it; and that knowledge of the subject judgment first came to the attention of the bonding company at its home office as the result of a communication from plaintiff's attorney herein demanding satisfaction thereof. The court also found that except for the usurious taint of the basic transaction, the plaintiff did not wrongfully participate in or contribute to any disadvantage the bonding company may have sustained in this cause; and that the "good cause" established by the bonding company to warrant stay of execution and suspension of proceedings on the final judgment pursuant to F.S. § 55.38, F.S.A., consists exclusively in the usurious transaction mentioned. The distinguished trial judge aptly observed:
"The Court is of the view that when it is properly and seasonably informed by competent evidence in a proper proceeding that its judgment has been rendered against a party (who is not legally or equitably estopped to raise the point) based upon a transaction which constitutes criminal usury under F.S. 687.07, then it becomes the duty of the Court to stay execution of such judgment pursuant to motion made by the innocent judgment debtor. The taint of such transaction and its repugnance to public policy together with the forfeitures accruing to the lender constitute good cause for staying the execution on this judgment in so far as the corporate defendant is concerned; * * *."
Section 687.07, Florida Statutes, F.S.A., works a forfeiture of "the entire sum, both the principal and interest," against one who charges or accepts "any sum of money greater than the sum of money loaned, and an additional sum of money equal to twenty-five per cent per annum upon the principal sum loaned," and makes it a misdemeanor so to do.
It is appellant's theory that notwithstanding the usurious character of the note given by Heaton individually, the surety is liable upon its bond to make payment of the defaulted note because the maker, Heaton, was a vice president of the surety corporation and its general agent, with power to write bonds and to retain attorneys for the defense or prosecution of actions arising out of any bonds or contracts executed pursuant to such agency, so that knowledge of the usurious transaction in suit was imputed to the surety. That argument is highly untenable. It ignores altogether the logical and well-established exception to the general rule that knowledge of the agent is imputed to the principal, whereby the rule is inapplicable in situations where the conduct of the agent is such as to raise a clear presumption that he would not communicate to the principal the facts in controversy, as where the agent acting nominally as such is in reality acting in his own business or for his personal interest and adversely to the *539 principal, or for any other reason has a motive or interest in concealing the facts from his principal. This is the case when the agent is engaged in committing an independent fraudulent act on his own account and the facts to be imputed relate thereto, so that the communication of such facts to the principal would in all probability prevent the consummation of the fraud, or where third persons or their representatives, who claim the benefit of the imputation of the agent's knowledge to the principal, collude with the agent to cheat or defraud the principal. 2 Am.Jur., Agency, § 379. The exaction of a bond to secure performance of a contract, the making of which constitutes a crime, is fraudulent per se, regardless of motive.
In further extension of these principles, it is the rule that if with the knowledge or assent of the creditor any material part of the transaction between the creditor and his debtor is misrepresented to the surety, the misrepresentation being such that but for the same having taken place either the suretyship would not have been entered into at all, or, being entered into, the extent of the surety's liability might thereby be increased, the surety so given is void at law, on the ground of fraud. Stone v. Compton (1838), 5 Bing. (NC) 141, 132 Eng.Rep. 1059. And if facts material to the surety are concealed by the obligee when it is his duty to disclose them, his motive in concealing is immaterial. Railton v. Mathews (1844), 10 Clark & F. 934, 8 Eng.Reprint 933; Jungk v. Holbrook, 15 Utah 198, 49 P. 305, 62 Am.St.Rep. 921. Cf. Harrison v. Lumbermen & Mechanics' Ins. Co., 8 Mo. App. 37; Howe Mach. Co. v. Farrington, 82 N.Y. 121; Damon v. Empire State Surety Co., 161 App.Div. 875, 146 N.Y.S. 996; Warren v. Branch, 15 W. Va. 21.
The power of the trial court under F.S. § 55.38, F.S.A., to stay executions on a showing of good cause has long been recognized. Fair v. Tampa Electric Co., (1946), 158 Fla. 15, 27 So.2d 514, 516; Valdosta Milling Company v. Garretson (Fla. 1951), 54 So.2d 196, 197; City of Coral Gables v. Hepkins (1932), 107 Fla. 778, 144 So. 385; Bartlett v. Cohn (1929), 97 Fla. 256, 120 So. 357; Deauville Realty Company v. Tobin (Fla.App. 1960), 120 So.2d 198, 200. In the Fair case, appellants challenged the power of the trial court to stay execution on the ground that the time for new trial had expired and a new term of court had commenced when the motion was filed. The Florida Supreme Court, speaking through Mr. Justice Thomas, held that the statute places no limitation upon the time to move for a stay of execution and that the distinction between extrinsic and intrinsic fraud need not be applied to the motions under the statute. We think that holding is correctly interpreted by the following extract from a note entitled "Good Cause for Stay of Executions in Florida", 9 U.Fla.L.R. 201, 205:
"The Court (Fair case) put into words what is implicit in all other cases construing good cause: No technical limitations are to be attached to the broad language of the statutes."
The stay order herein is based on the usurious transactions and its repugnance to public policy. The legal considerations involved are not unlike those in suits to enjoin enforcement or set aside a judgment. In Dial v. Kirkpatrick, 168 Okla. 21, 31 P.2d 591, 95 A.L.R. 1263, the Oklahoma court, in setting aside a judgment applied an Act of Congress declaring invalid contracts for debts made with members of the Osage Tribe of Indians who had not received a certificate of competency, unless the contract was approved by the Secretary of the Interior, and held that where the invalidity of the contract upon which the judgment is based arises by reason of a law defining the public policy of the state or nation and designed for protection of a class of individuals, and where treating such a judgment as valid would defeat the very end which *540 the law was enacted to accomplish, there existed an exception to the general rule that a proceeding to open or vacate a judgment cannot be sustained on any ground which might have been pleaded in defense of the action.
In Richter Jewelry Co. v. Schweinert, 125 Fla. 199, 169 So. 750, the Florida Supreme Court held that a contract exacting interest at the rate of more than 25% per annum is void as against public policy. The appellee here is a surety authorized to do business in this state. A contract of surety imports entire good faith and confidence between the parties in regard to the whole transaction; moreover, a surety is a favored debtor and his rights are jealously guarded, both at law and in equity. Any fraud on the part of the creditor, touching the contract, annuls it. Magee v. Manhattan Life Ins. Co., 92 U.S. 93, 23 L.Ed. 699.
The evidence before the trial court amply supports the order granting appellee's motion for stay of execution. The result accords with justice and law. The note in suit hides the usurious interest in the purported principal amount payable thereunder and this fact was not brought home to appellee. Under the circumstances of this case, Heaton was acting outside the scope of actual or apparent authority in furnishing the subject bond. This conclusion makes it unnecessary to discuss the finding of the trial court to the effect that Heaton not only failed to bring to the attention of the surety the nature of his transaction with the obligee on the bond, but also failed to notify the principal of the issuance of the bond, of the fact that the suit was filed thereon, or that judgment was rendered against it.
Affirmed.
CARROLL, DONALD K., Chief Judge, and RAWLS, J., concur.