148 So.2d 759 (1963)
William V. GRUMAN, Appellant,
v.
SAM BREEDON CONSTRUCTION CO., Inc., and Maryland Casualty Company, Appellees.
No. 3099.
District Court of Appeal of Florida. Second District.
January 4, 1963.
Rehearing Denied February 5, 1963.
Francis C. Lowthorp of Fowler, White, Gillen, Humkey & Trenam, Tampa, for appellant.
Mabry, Reaves, Carlton, Fields & Ward, Tampa, for appellees.
SHANNON, Chief Judge.
Appellant Gruman applied for arbitration as provided for in the contract for construction of an apartment house by Sam Breedon Construction Co., Inc., appellee, the performance of which was guaranteed by Maryland Casualty Company. In an answer filed by Maryland Casualty Company its fifth defense set out that the casualty company guaranteed performance of a contract in the amount of $69,600.00, but that Gruman and the construction company had so modified the agreement covered by the bond without the consent or approval of the casualty company as to relieve it of liability. The order of the court provided in part:
"* * * It is apparent from the testimony that the contract dated March 30, 1960, was the one intended to be guaranteed by the casualty company. However, and in addition, the testimony is clear that the amount of $69,600.00 in the contract was a fictitious amount and not the amount actually agreed upon between the petitioner and the construction company. The actual amount agreed upon was the maximum of $71,000.00, the amount in the contract *760 being a fictitious figure made for the purpose of having the construction company appear as the low bidder, which modification was without the knowledge of or consent of the casualty company. The amount charged by the casualty company as a premium, as evidenced by the stipulation of the parties, was based on the fictitious figure of $69,600.00."
The lower court entered an interlocutory order dismissing Maryland Casualty Company from the cause, relying on Lambert v. Heaton, Fla.App. 1961, 134 So.2d 536, and cases there cited.
On appeal the question is whether a compensated surety should be relieved of its obligation and dismissed from the cause where the contract, the performance of which it insures, may be varied by a separate letter, which to the surety is unknown, without proof of the extent to which it possibly could be harmed.
The contract consisted of a printed agreement and a supplementary letter, the exact dates of which are in dispute, but which dates are not here material. The price for the completed work, as stated in the contract, is $69,600.00, which included estimates on prospective costs of sub-contracting work previously filed by the contractor with the architect. It appears, however, that the contractor had fixed these figures at a very low figure, when, fearing a possible loss, he asked for and received from the owner a supplementary letter permitting a maximum contingent increase of $1,400.00 in the price to be paid for the completed work, in case the figures used in the contract should, in fact, prove to be too low.
The contract and letter were in existence at the time the surety bond was given and hence this case should be treated as one of possible fraud in the inducement.
The appellant maintains that the contingent increase provided for in the letter will not exceed the sum of $1,400.00, at most. It is plainly discernible that the amount would be dependent upon the ability of the contractor to let the sub-contract within the original estimates. In any event, the work and materials provided for in the original contract were to be supplied. It is also equally clear that the surety only exposed itself to $69,600.00 liability in its bond. We are concerned with whether or not the alleged concealment or misrepresentation is one of material fact, which is essential for proof of fraud. The supplementary letter mentioned above only requires that the appellant, as owner, incur an obligation not exceeding $71,000.00, though he may well become obligated only for the amount of the contract. The important thing is that it adds nothing whatever, nor does it detract from the contractor's obligation to perform the work in strict accordance with the terms of the contract. There is no evidence in the record of the misrepresentation of a material fact which will in any way affect the liability of the surety.
At common law most of the cases involving sureties were those wherein liabilities of the surety were assumed gratuitously. It was generally held, therefore, that any conduct prejudicial to the surety would result in the total discharge of the surety from any liability. The modern trend of case law, however, including that of the Florida jurisdiction, is to the effect that in order for the surety to be discharged there must be a concealment of material facts whereby the surety may be injured or its rights affected. The rule has thus been stated:
"One of the fundamental principles which pervades the jurisprudence involving fraud and the maintenance of actions or defenses based thereon is that to constitute fraud in any case the facts misrepresented or concealed must have been material facts which substantially affect the interests of the person alleged to have been defrauded. * * *" 23 Am.Jur., Fraud and Deceit, Sec. 111.
*761 See also Columbus Hotel Corporation v. Hotel Management Co., 1934, 116 Fla. 464, 156 So. 893; 23 Am.Jur., Fraud and Deceit, Sec. 141.
In Florida, as we have stated, the necessary element of injury or prejudice must be shown where, as here, the surety is compensated. This law is well laid down in Gibbs v. Hartford Accident Indemnity Co., Fla. 1952, 62 So.2d 599. In 30 Fla.Jur., Suretyship and Guaranty, Sec. 14, the principle is stated:
"* * * Under the modern rule, a material breach by the obligee of the contract, which increases the risk of the surety, will release the latter from his obligation, as will a material alteration of the contract; but in the case of a compensated surety regard must be had to the extent to which the interests of the surety are in fact prejudiced by breach of any duty resting upon the person indemnified. While a surety should not be allowed to suffer by reason of such a breach, neither should he be permitted to profit thereby. Hence if the breach is one in respect of which the surety can be compensated for any damage he suffers, he should be so compensated but will not necessarily be discharged from his obligations. * * * The transaction to which the surety seeks to avail himself for his discharge must be such as to lessen the ability of the principal to comply with his contract, alter the rights of the parties, or enlarge the demand, to the prejudice of the surety."
In the case of Maryland Casualty Co. v. Eagle River U.F.H. School Dist., 1925, 188 Wis. 520, 205 N.W. 926, a portion of which was quoted with approval by our Supreme Court in the case of Gibbs v. Hartford Accident Indemnity Co., supra, the court stated:
"The number of cases coming to the courts, in which paid sureties are urging their complete discharge by reason of some infraction of the contract on the part of the indemnified, suggests that a more specific rule concerning their rights and liabilities be stated. It is believed that rule will be easy to discover, if such contracts be consistently treated (as they have often been declared to be) as insurance contracts rather than the common-law surety contract. It is true that such contracts retain the form of surety contracts. But the principles governing the liability of sureties did not spring from the form of the contract, but rather from the relations of the parties to such contracts, and a striking change in that relation exists where the obligation of the surety, once gratuitously assumed, is now assumed as a source of profit. * * *
"* * * There can be no injustice in requiring a paid surety, when in the business for profit, to prove that alleged delinquencies or misconduct on the part of the indemnified resulted, not only in damage to the surety, but the extent of such damage. * * *"
Union Oil Co. of California v. Pacific Surety Co., 1920, 182 Cal. 69, 187 P. 14, while not directly in point with the instant case, contains, in part, this language:
"It is not specifically found that the purpose of the parties was to deceive the surety company, although it is found that the terms of payment contained in the side agreement were not disclosed to the surety company, and that that company had no knowledge concerning the side agreement at the time it executed its bond, and that the failure to disclose the true terms of payment `constituted and was a concealment of material facts and circumstances important for said Pacific Surety Company to know, and that the surety company was thereby exposed to a *762 risk and liability greatly in excess of that to which it would have been exposed under the terms of payment set forth in the recorded contract.' It is difficult to see how the surety was in any wise prejudiced by the transaction. * * *"
In the case of Lambert v. Heaton, supra, the surety had given a performance bond under which the payment of a note was guaranteed. The surety alleged that the note was usurious and its position was sustained. Judge Sturgis, in writing for the court, stated:
"In further extension of these principles, it is the rule that if with the knowledge or assent of the creditor any material part of the transaction between the creditor and his debtor is misrepresented to the surety, the misrepresentation being such that but for the same having taken place either the suretyship would not have been entered into at all, or, being entered into, the extent of the surety's liability might thereby be increased, the surety so given is void at law, on the ground of fraud. * * *"
It is noted, therefore, that the misrepresentation charged must go to a material part of the transaction and that, in order for the surety to be totally exonerated, the departure must result in injury to it. Gibbs v. Hartford Accident & Indemnity Co., supra. In the instant case there is no allegation of resultant injury to the surety by reason of the addition to the contract of the aforementioned supplemental letter. The facts here differ from those in Lambert v. Heaton, supra, and we conclude that the lower court in the instant case erred in dismissing the surety from the cause.
Reversed and remanded.
KANNER and SMITH, JJ., concur.