FIRST NATIONAL BANK OF DURAND v. SHAW.[1]

1. BILLS AND NOTES—ACTION—PLEADING—NOTICE OF DEFENSE—SUFFICIENCY.

In an action on a promissory note against several, a notice of special defense, supported by the affidavit of one of the defendants denying the execution of the note, is sufficient to justify the requirement that plaintiff must show the execution of the note before it can be offered in evidence, and to admit the defense of forgery as to some of the signatures.

2. SAME—JOINT AND SEVERAL NOTE—FORGERY IN PART—EFFECT.

Though a part of the names purporting to be signed to a joint and several note are forged it is valid in the hands of a bona fide holder as against those who actually signed it.

[1] The opinion filed on the original hearing in this case was withheld from publication pending the rehearing.

Error to Presque Isle; Emerick, J.   Submitted January 18, 1907.   (Docket No. 57.)   Decided March 5, 1907. Rehearing denied July 15, 1907.

Assumpsit by the First National Bank of Durand against Thomas E. Shaw and others on a promissory note.   There was judgment for defendants, and plaintiff brings error.   Reversed.

*John T. McCurdy* (*Lyon & Moinet,* of counsel), for appellant.

*Charles R. Henry,* for appellees.

MOORE, J.   This action was brought upon a note reading as follows:

"$600.00          .   ONAWAY, MICH., Nov. 18th, 1901.
·   " On September 1st, 1903, after date, for value received, I promise to pay to Comstock & Crawford, or order, six hundred dollars at the Onaway Banking Company office in Onaway, Mich., with interest at 6 per cent. per annum, interest payable annually."
Signed by Thomas E. Shaw and 19 others.

Plaintiff purchased this with two other notes, aggregating $2,000, and claimed to be a bona fide holder thereof. Defendants pleaded the general issue with notice that the note was procured by fraud on the part of the payees; that the names of a number of the signers of the note were forged; that some of the makers signed the note with the understanding and agreement that before the note was to be delivered certain others should also sign it, which was not done; that the note in question was given as the purchase price of a certain stallion; and that the horse did not comply with the representations made by the payees of the note.   A copy of the note in question was embodied in the declaration by which the suit was commenced. Thomas Shaw, one of the defendants, made and filed an affidavit, denying the execution of the note.   The case was tried before a jury which rendered a verdict in favor of defendants.

Inasmuch as the jurors were instructed that the plaintiff was a bona fide holder of the note, it will be unnecessary to discuss many of the questions presented by counsel. There are, however, two important questions which call for consideration. The first of these is, Was the notice sufficient to justify the requirement that plaintiff must show the execution of the note, before it could be offered in evidence, and to admit the defense of forgery as to some of the signatures? We think the judge was justified in holding the notice to be sufficient, by the following authorities: *McCormick* v. *Bay City*, 23 Mich. 457; *Wren* v. *McLaren*, 48 Mich. 197; *Haight* v. *Arnold*, 48 Mich. 512; *McRobert* v. *Crane*, 49 Mich. 483; *Thompson* v. *Village of Mecosta*, 127 Mich. 522.

The important question in the case is presented by those portions of the charge to the jury reading as follows:

"Here was a club of 20 men, as is conceded, organized for the purpose of purchasing this horse. Those 20 men were willing to sign notes which would bind them for the payment for that horse. The paper which they did sign—that is, those of them who signed it—is a joint and several note. The language of the note is: 'On September 1st, 1903, after date, for value received, I promise to pay to Comstock & Crawford, or order, six hundred dollars.' And the other notes, each of them for $700, are of the same tenor and purport. It is not only a joint note, of 20 defendants, but it is a joint and several note, upon which any one of these defendants might be sued alone and held for the full payment of the face of that note. And those men, gentlemen, when they signed that note, had the right to have it signed by 19 other men, whose signatures should not be forgeries, but should be the genuine, binding signatures of the men whose names purported to be upon the instrument. It seems to me that that would be common sense. It seems to me to be common sense. It sounds to me as though it would be common fairness, and honesty, and it is the law.

"The question in this case, gentlemen of the jury, for your consideration is whether these claims of these men that they never signed this note, or authorized it, are true. Mr. Gillis, Mr. Curtis, Mr. Irwin, Mr. Deitrich,

and Mr. Thomas assert they never signed this paper.
\* \* \*

" I charge you as the law, that if those five men, or any one of them, did not sign this note — if those five men or any one of them, did not sign this note, or authorize it to be signed for them, but that their names were forged without their consent, it would invalidate the note as to every one of these defendants, and your verdict would be no cause of action.    That is the law of this case in a nutshell.    \* \* \*

" If you do not find that fact by a fair weight and preponderance of the evidence, you will find a verdict for the plaintiff for $736.02."

Counsel for the defendants insists the court properly instructed the jury upon this phase of the case.    We quote from his brief:

" The note in question contained 20 signatures.    Five of the men whose names appear on the note allege their names are forged.    When the payees procured this note, it was with the understanding and agreement, expressed and implied, that genuine names should be signed to the note of responsible men to the number of 20.    Witness Chandler was the last man to s gn the note.    There were 19 other names on the note at that time.    Mr. Chandler testifies that when he signed the note, the last man to sign it, he did not question the other signatures.    At that time he was asked by the payees of this note, who brought it to him, to sign the note, which note, at the time it was so brought to him by the payees, contained from one to five forged names.    As soon as the payees obtained Mr. Chandler's name to the note, they retained possession of it, and seek to maintain that it is good in the hands of an innocent purchaser.    We contend that it was a forged note and void as against every signature, even in the hands of an innocent purchaser.    \* \* \*

" The evidence in this case shows that the payees took the note from man to man, securing the signatures of the makers.    To every maker who actually signed the note, there was a forgery before or after his signature.    If it was before his signature he was defrauded as much as though it was after his signature.    \* \* \*

" If those five names had been signed by the parties themselves, the other 15 signers would have less to pay. They were therefore prejudiced in any view we may take

of it, by the forgery of the names in the note; and, as held in *Searles* v. *Seipp*, 6 S. Dak. 472: 'Under the modern authorities, such a note is held void in toto.'"

There can be no serious doubt that forgery of a negotiable instrument, or the indorsement thereon, except in case of ratification or estoppel, nullifies the instrument as to all parties against whom the forgery is committed. Norton on Bills & Notes (3d Ed.), p. 254, and this is true of paper which is altered in a material part. 2 Parsons on Notes & Bills, pp. 571, 580. It has been held that the destruction of a memorandum written under a promissory note, and qualifying it, vitiates the note in the hands of a bona fide holder, having no knowledge of the alteration. *Wait* v. *Pomeroy*, 20 Mich. 427; *Holmes* v. *Trumper*, 22 Mich. 429; *Bradley* v. *Mann*, 37 Mich. 1; *First Nat. Bank of Cassopolis* v. *Carter*, 138 Mich. 421, and the many cases there cited. These cases are not conclusive of the question involved here. An examination of the cases will not show one where part of the signatures were genuine and part forgeries, which had been placed thereon before the note was executed and delivered. Nor will they show a case where the alteration was made before the note was delivered. We think this is an important distinction.

Counsel for plaintiff contend that while the charge of the court might be good in a controversy between the original parties to the note, that it is not good law when applied to a bona fide holder of the note. They urge that as the note is joint and several, that even though some of the makers could not be held because their names were forged that this would not be true of those whose signatures are genuine, citing many cases.

*Selser* v. *Brock*, 3 Ohio St. 302, was a case where Mr. Briggs signed after two other signatures that were forged, though he supposed at the time they were genuine. In disposing of the case the court said:

"The relation between a surety and the holder of a promissory note, is, in many respects, similar to that which

exists between the indorser and the holder; and we learn from Story on Promissory Notes, p. 153, that the obligations which exist between the indorser and every subsequent holder of a promissory note, are similar to that which exists between the drawer and the payee of a bill of exchange. And one of the consequences of a doctrine that a negotiable instrument, after indorsement, will pass by mere delivery, is, that if it should, after indorsement, be lost or stolen, or fraudulently misapplied, any person who should subsequently become the holder of it, bona fide, for a valuable consideration, without notice, would be entitled to recover the amount thereof, and hold the same against the rights of the owner, at the time of the loss or theft. This arises from the peculiar rights and obligations of negotiable paper, and the nature of the functions which it performs in commercial transactions.    There is, therefore, great justice and propriety in the rule, that the payee or indorsee of negotiable paper takes it free from any of the conflicting equities existing between the several makers or obligors, of which he had no notice."

In *Bigelow* v. *Comegys*, 5 Ohio St. 256, it was held that a surety to a replevin bond was not relieved of liability because the name of the other surety on the bond was forged.

To the same effect in relation to the bond of a cashier is *Franklin Bank* v. *Stevens*, 39 Me. 532.

In *York County Mut. Fire-Ins. Co.* v. *Brooks*, 51 Me. 506, it was held no defense that the surety to a bond was induced to sign by the promise of the principal that he would obtain other signatures before the bond was delivered, which promise was not performed, if the obligee had no knowledge.    It was also so held where the surety signed, supposing a forged name thereon was genuine, the obligee being ignorant of the facts surrounding the giving of the signature.

In *Veazie* v. *Willis*, 6 Gray (Mass.), 90, the guarantor of a note indorsed by B., C., and D. was held liable where the signatures of the maker and of B. were forgeries.    In the opinion it is said:

"The ground of objection to the maintenance of the

action is, that the contract, on the part of the defendant, was made upon the assumption that all the names borne on the note were genuine signatures, and that he intended only to guarantee the solvency and ability of the parties to pay the same, treating all the names thereon as liable, as parties to the note.  But, it appearing, upon the facts stated, that the defendant guaranteed the payment of this particular note, and thereupon the plaintiff concluded his agreement to purchase the note, both parties being equally innocent as to any fraud, misrepresentation, or concealment, the court are of the opinion that, upon the nonpayment of the same at its maturity by the parties whose names were borne thereon, the defendant, under his guaranty, became liable to pay the same to the plaintiff, although it now is made to appear that the names of the maker of the note and one of the indorsers were forgeries."

In *Stoner* v. *Millikin*, 85 Ill. 218, a surety was held liable though he had refused to sign unless another person first signed, and the principal maker of the note, instead of obtaining the signature of the other as promised, forged his name.   In the opinion, it is said:

"Why should this forgery operate in discharge of Stoner, and entitle him to have his property exempted from sale on the execution ?   It may have been a wrong toward him, and have caused him to incur a greater extent of liability than he expected; and the supposed obtaining of the execution of the note by John Lee may have been the sole condition upon which he signed his name to the note.   Yet, on satisfactory evidence to himself, in that respect, he did place his name unconditionally to the note as a maker thereof, and left it with Thomas Lee to deliver to Millikin & Co., knowing that on the faith of his (Stoner's) promise to repay it, they would part with their money to Thomas Lee.   There is no just reason why this promise to Millikin & Co. should not be kept.

"Whatever of wrong there was to Stoner, was perpetrated by his co-maker, Thomas Lee.   Millikin & Co. were wholly innocent in the matter.   They had no notice of anything which had been transpiring among the makers of the note, as between themselves.   Nor was it incumbent upon Millikin & Co. to exercise care over the interest of the surety in the note, look to the inducement which led him to become such, and see that it should not fail.

They had but to watch over their own interest, and see that the security offered was a sufficient protection for them. · For the lack of the vigilance they failed to exercise in this respect, they suffer the full consequence in the loss of the security of the name of John Lee. Whatever of fraud and deception the co-makers of the note· practiced toward one another, was their own sole concern, and the consequence, so far as may affect them in their relation to each other, should be borne by themselves alone. There is no justice in requiring Millikin & Co. to assume the risk of such conduct, and no sound principle upon which they should be made to suffer loss because of it, not being privy thereto.

" *York County Mut. Fire-Ins. Co.* v. *Brooks*, 51 Me. 506, and *Selser* v. *Brock*, 3 Ohio St. 302, are direct authorities to the point that such a forgery of the name of a prior surety will not discharge a subsequent surety. See *Young* v. *Ward*, 21 Ill. 223. We regard the language of Lord Holt, in *Hern* v. *Nichols*, 1 Salk. 289, as applicable, that ' Seeing that somebody must be a loser by this deceit, it is more reason that he that employs and puts a trust and confidence in the deceiver should be a loser,· than a stranger.'"

In *Deardorff* v. *Foresman*, 24 Ind. 481, A executed his note, payable to the order of B, and induced C and D to sign as sureties upon the promise that A would procure other persons named by him to sign as sureties. He did not do as he agreed but delivered the note to B. In a long opinion in which a large number of cases are discussed it is held that C and D were liable. See *State, ex rel. McCarty,* v. *Pepper*, 31 Ind. 76; *Carr* v. *Moore*, 2 Ind. 602.

In *Helms* v. *Agricultural Co.*, 73 Ind. 325, a surety was held liable though some of the signatures were forged. In the opinion it is said:

"The doctrine of the instructions given is expressed in the following proposition, namely: When the name of one of two or more obligors in a bond, note, or other writing obligatory, has been forged, the supposed co-obligor, though a surety only, and though he signed in the belief that the forged name was genuine, is nevertheless bound,

149 MICH.—24.

if the payee or obligee accepted the instrument without notice of the forgery. This doctrine is supported either directly or in principle by the following authorities: *Veazie* v. *Willis*, 6 Gray (Mass.), 90; *York County Mut. Fire-Ins. Co.* v. *Brooks*, 3 Am. Law Reg. (N. S.) 399 [51 Me. 506]; *Franklin Bank* v. *Stevens*, 39 Me. 532; *Stoner* v. *Millikin*, 85 Ill. 218; *Selser* v. *Brock*, 3 Ohio St. 302; *Bigelow* v. *Comegys*, 5 Ohio St. 256; *Hagar* v. *Mounts*, 3 Blackf. (Ind.) 57; *Harter* v. *Moore*, 5 Blackf. (Ind.) 367; *Carr* v. *Moore*, 2 Ind. 602; *State* v. *Van Pelt*, 1 Ind. 304; *Deardorff* v. *Foresman*, 24 Ind. 481; *State, ex rel. McCarty*, v. *Pepper*, 31 Ind. 76; *Craig* v. *Hobbs*, 44 Ind. 363; Brandt on Suretyship and Guaranty, § 358.

"The appellants insist on a contrary doctrine, relying mainly for authoritative support upon the case of *Seely* v. *People*, 27 Ill. 173. That case goes full to the extent claimed for it, but it was confessedly decided without citation or knowledge of any supporting authority, and has recently been expressly overruled by the case of *Stoner* v. *Millikin*, supra, which, besides a citation of adjudicated cases, is supported by reasons much more satisfactory and conclusive."

This case is cited with approval in *Hunter* v. *Fitzmaurice*, 102 Ind. 449, where it was held that when the name of one of two or more obligors on a note is forged the co-obligor though only a surety who signed in the belief that the forged name was genuine, is nevertheless bound, if the payee accepted the note without notice of the forgery. In the case at bar a joint and several note, purporting to have been signed by 20 persons, is before maturity put afloat. There is nothing in its appearance to cast doubt upon any of the signatures. A bank becomes a bona fide holder of the note. It turns out that some of the signatures are forged. If we apply the principles of law stated in the cases to which we have called attention, is it not clear that the signers whose signatures are genuine are liable? We think the answer must be in the affirmative.

Judgment is reversed, and new trial ordered.

McALVAY, C. J., and CARPENTER, GRANT, and HOOKER, JJ., concurred.