LESLIE *v.* KENNEDY.

1. FORGERY—INTENT TO DEFRAUD GIST OF OFFENSE.
   Intent to defraud is the gist of the offense of forgery.

2. VENDOR AND PURCHASER—RESCISSION—FORGERY NO CAUSE FOR RESCISSION WHERE NO INTENT TO DEFRAUD.
   Although the salesman who had sold on contract a lot which had reverted to the owners sold it to plaintiff, and, to give him the benefit of the payment made on the original contract, signed the vendee's name to an assignment thereof, which was ratified by the owners by their acceptance thereof in writing, plaintiff, who is in default in payments, is not entitled, by reason of said deceit, to rescission of the contract and return of money paid thereon, since there was no intent to defraud, plaintiff received the benefit of the assignment, and secured an enforceable contract which the owners of the lot have been at all times ready to perform.

Appeal from Wayne; Webster (Arthur), J. Submitted January 9, 1930. (Docket No. 65, Calendar No. 34,756.) Decided March 6, 1930.

Bill by Arthur Leslie against Charles J. Kennedy and others to rescind a land contract for fraud. Cross-bill by defendants to foreclose. From decree for plaintiff, defendants appeal. Reversed.

*Wynn & Zinn,* for plaintiff.

*Edmund M. Sloman* and *Everett H. Wells,* for defendants.

SHARPE, J. In the spring of 1925 the defendants were the owners and subdividers of certain real estate near Detroit, in the county of Wayne. They had in their employ as a salesman one Russell Carrier. He had formerly been employed by Joe and Louise Schiappicasse as a chauffeur. Soon after entering the employ of the defendants, Carrier induced Mrs. Schiappicasse to purchase a lot in the subdivision. She paid him $20, and instructed him to have the name of her brother, Jerome Henley, inserted in the contract as purchaser, as she was buying it for him. On March 30th Carrier prepared a preliminary purchase agreement covering lot 293, and had his wife sign the name "Jerome Henley" thereto, and turned this agreement and the $20 deposit into the office of the defendants, the deposit being credited to Henley on defendants' books. About a week later, Mrs. Schiappicasse told Carrier that she did not want to complete the purchase, and he said "it would be all right." She did not ask for the return of the deposit, nor was it made to her. No entry was made in defendants' books relative thereto.

In the month of May following, Carrier's brother introduced plaintiff to him as a prospective purchaser of a lot in the subdivision. The three of them afterwards visited the property, and Carrier

then told plaintiff that a down payment of $20 had been made on lot 293, and that he could give plaintiff the advantage of it by transferring the deal to him. Later, plaintiff decided to make the purchase. Carrier, after consulting with T. G. Harris, the sales manager under whom he worked, prepared a land contract for the sale of lot 293 by defendants to Jerome Henley, dated May 7, 1925, for the sum of $1,000, of which $200 was acknowledged to be paid and the balance in monthly instalments, secured the signature of defendants thereto, and himself signed the name of Jerome Henley as purchaser. He attached an assignment of the contract from Henley to the plaintiff, and signed Henley's name to it. To this was appended the following, signed by plaintiff: "I, Arthur Leslie, accept this transfer and agree to carry out all provisions named in said contract." The contract provided:

"That no sale, transfer, assignment or pledge of this contract shall be in any manner binding upon the seller unless either said Charles J. Kennedy or Charles A. Kandt first consents thereto in writing."

To comply therewith, Carrier procured the signature of Charles J. Kennedy to an indorsement reading: "The transfer of this contract is accepted by the undersigned."

Plaintiff borrowed $180 from Carrier's brother, and paid it to Carrier. This, with the $20 paid by Mrs. Schiappicasse, made up the down payment required, and the contract with its indorsements was turned over to plaintiff. He made additional payments thereon, amounting to $318.16. On April 20, 1928, he was in default in the sum of $206.79, and defendants caused a notice to be served on him that unless this amount was paid on or before April 30,

1928, forfeiture would be declared. He made no further payments, and on May 31, 1928, a notice of forfeiture was served.

Plaintiff had theretofore complained to defendants that lot 289, cornering on an alley, had been pointed out to him as the lot he had purchased, and on August 11th he notified defendants that for this reason he elected to rescind, tendered an assignment of his contract, and demanded payment of the moneys paid by him on the contract.

On August 15th defendants began proceedings before a circuit court commissioner to obtain possession of the lot, pending the disposition of which plaintiff filed the bill of complaint herein, praying for rescission and a return of the moneys paid. In a cross-bill defendants seek foreclosure of the contract.

The trial court found that plaintiff had failed to establish his claim of misrepresentation in the location of the lot, but held that Carrier had committed forgery in signing Henley's name to the contract and assignment; that the defendants, on discovery of it, could have set it aside, and that "If, upon discovery, one party could repudiate it, why not the other?" and granted plaintiff the relief prayed for in his bill. From the decree entered so adjudging, the defendants have appealed.

It is elementary that an intent to defraud is the gist of the offense of forgery. *Prine* v. *Singer Sewing Machine Co.,* 176 Mich. 300. The facts, and we have stated them at some length, fail to disclose any such intent on the part of Carrier. He had no authority and no legal right to sign Henley's name to the contract and assignment. But he personally gained nothing by doing so. His only purpose was to secure to plaintiff on his down payment the credit

of the $20 paid by Mrs. Schiappicasse.   The only person benefited thereby was the plaintiff.   The defendants have ratified such act, and by their consent, indorsed upon the assignment, have secured to plaintiff an enforceable contract; one which they have been at all times ready to perform and on which plaintiff is credited with more than $500 of the purchase price.   We see no. reason why he should be permitted in a court of equity to rescind the contract for this reason.

We are in agreement with the trial court in holding that the claim of misrepresentation as to the lot intended to be purchased by plaintiff is not supported by a preponderance of the evidence.   It will serve no useful purpose to set forth the testimony bearing upon it.

The decree is reversed, and one will be entered here dismissing plaintiff's bill and granting the defendants the relief prayed for in their cross-bill. There will be remand to the circuit court for such further proceedings thereunder as may be necessary.   The defendants will recover costs.

WIEST, C. J., and BUTZEL, CLARK, POTTER, NORTH, and FEAD, JJ., concurred.   McDONALD, J., did not sit.