Stanley Mruk, Appellant, v. Chicago Title and Trust
Co., Appellee.

Gen. No. 43,285.

Opinion filed April 11, 1946. Re-
hearing denied May 15, 1946. Released for publication May 16, 1946.

MARKMAN, DONOVAN & SULLIVAN, of Chicago, for
appellant; CHARLES E. LOY, of Chicago, of counsel.

NATHAN SCHWARTZ, of Chicago, for appellee; NOR-
MAN H. ARONS, of Chicago, of counsel.

MR. PRESIDING JUSTICE FRIEND delivered the opinion
of the court.

In this proceeding the plaintiff, owner of four bonds
which he had delivered to the defendant, Chicago Title
& Trust Co., as depositary for the committee for the
protection of bondholders of property under fore-
closure, and for which bonds he had received a certif-
icate of deposit which was subsequently stolen from
him and to which his signature had been forged in an
assignment thereof, sought relief against defendant
because it refused to deliver to him certain shares of
stock in a corporation which had been organized to

take over the property in exchange for bonds issued to the rightful owners of certificates or the lawful transferees thereof. After extended pleadings, embracing some 42 pages of the abstract of record, the court entered an order striking plaintiff's fourth amended replication, and he having elected to stand thereby, a decree was entered dismissing his complaint for want of equity, from which he has taken an appeal.

The facts admitted by the pleadings disclose that Chicago Title & Trust Co., by instrument in writing dated January 27, 1931, became the depositary for a bondholders' committee of certain first mortgage gold bonds on improved property known as "The Gables." Plaintiff being the owner of four of these bonds, each of the par value of $500, surrendered and delivered them to defendant and received therefor certificate of deposit No. 32 in the usual form issued to bondholders who had delivered or surrendered their bonds to the depositary. Thereafter, some time prior to July 20, 1938, certificate of deposit No. 32 was stolen from plaintiff, his name was forged thereto, and the certificate was sold to one Julius Reingold without plaintiff's knowledge or consent for the nominal sum of $200. Reingold signed the certificate as a witness to the alleged signature of plaintiff and the indorsement was guaranteed by Fred E. Busbey & Company and the Northern Trust Company. Thereafter the certificate was presented to defendant who issued a new certificate to Reingold. About July 20, 1938, when plaintiff learned of the theft of said certificate, he called at the office of defendant, where certificate No. 32 bearing the forged signature thereon was exhibited to him. He then advised defendant that the signature was a forgery and that the certificate had been stolen from him. Thereafter, defendant requested him to call at its office in Chicago and in the presence of certain of its officers, agents and several handwriting

experts who had been engaged by defendant, plaintiff wrote his name a number of times to enable the experts to compare his handwriting with the signature on the certificate. After examination, they were of the opinion that the signature on said certificate was not in his handwriting.

It further appears that pursuant to a plan of reorganization by the protective committee, a corporation was organized known as 8001 Edgewater Road Building Corporation which took over the property upon which the bonds had been issued and delivered stock of the corporation to defendant to be turned over to the rightful owners of certificates or to the lawful transferees thereof. Under the aforesaid plan the rightful owner of certificate No. 32 became entitled to 2206 shares of the new corporation. Plaintiff made numerous demands and requests upon defendant to turn over and deliver said stock to him or his attorney, all of which were refused. Defendant held said stock without delivering it to anyone until May 1941, when 2206 shares were turned over to Julius Reingold who had presented the stolen certificate No. 32 upon which plaintiff's name had been forged. Defendant's attorney has in his possession a certain alleged bill of sale dated January 22, 1937 bearing plaintiff's signature. It is witnessed by his daughter-in-law, Marie Mruk, one of the persons who sold the certificate to Reingold. Plaintiff cannot read, write or understand English and was induced to sign the alleged bill of sale by his daughter-in-law and his son, Mike Mruk, who represented to plaintiff that his signature on the instrument would enable him to obtain an old age pension. At the time he signed it he did not know it was a bill of sale. His signature thereto was obtained long after the certificate had been sold to Reingold and after Reingold had turned it over to defendant and had obtained a duplicate certificate. The alleged bill of sale was not presented to Reingold at the time

the certificate was delivered to him and was never delivered to the defendant. As a matter of fact defendant did not rely upon it but relied solely on the indorsement upon the certificate and the guarantee of the indorsement. The certificate of deposit on its face provides that "The interest represented by this Certificate is transferable, subject to the terms and conditions of said Deposit Agreement, only on the books of said Depositary by the holder hereof in person or by attorney upon surrender of this Certificate properly endorsed."

Defendant takes the position and the chancellor was evidently of the opinion that the rights of the parties are governed solely by the terms of the deposit agreement and that plaintiff is precluded thereby, despite the forgery of his signature, because he failed or refused to comply with section 5 of article I of the deposit agreement which provides that "In case of loss, theft or destruction of any certificate, the applicant for a new certificate shall furnish indemnity satisfactory to the Depositary and to the Committee." Defendant's counsel argue that neither the amended complaint nor any other pleadings allege the performance of this condition precedent and therefore plaintiff cannot obtain the relief sought. The pleadings indicate that Reingold offered and gave security whereas plaintiff did not, although he had ample time after notifying defendant of the forgery within which to do so. We think it is a sufficient answer to this contention that the provision for indemnity is not applicable to plaintiff because the certificate of stock, although stolen, was not lost or destroyed but was in defendant's hands. That provision, as we construe it, is applicable to situations where the owner of the certificate is unable to produce it, but claims that it has been lost, stolen or destroyed, that he is still the rightful owner thereof and that no indorsement or transfer has been made. The indemnity is for the

protection of the transfer agent, trustee or corporation in the event the instrument should eventually be produced in the hands of a *bona fide* owner. The provisions of the deposit agreement do not apply where the certificate is actually in the possession of the party authorized to make the transfer, as in the instant case.

Relying further on the deposit agreement, defendant next urges that the depositary may recognize a transfer of the certificate other than by an indorsement of the certificate itself, and that the bill of sale was sufficient warrant for ultimately delivering the shares of stock to Reingold. This contention utterly disregards the fact that the certificate of sale was not relied upon by Chicago Title & Trust Co. in transferring the certificate of deposit or issuing the stock to Reingold. After plaintiff had furnished conclusive proof of the forgery, there was no legal justification for delivering the certificate of stock to Reingold in total disregard of its duty and in violation of plaintiff's rights, simply because he failed or refused to furnish indemnity under a provision of the deposit agreement which had no application to the facts. Under ordinary circumstances it would be possible to transfer the interest represented by a certificate of deposit by separate instrument, as defendant contends, but in the case at bar the bill of sale did not accompany the certificate and was not relied upon as a means of conveying title thereto. The real fraud in this proceeding is chargeable to Reingold. All the circumstances indicate that he knew, or at least should have known had he used reasonable diligence, that the certificate which he purchased was stolen and that the signature thereon was not in plaintiff's handwriting. He bought the certificate for 10 per cent of the face value of the bonds. The usual means of transferring title to a certificate is by indorsement. If Reingold doubted the validity of the indorsement, having obtained the cer-

tificate from someone other than plaintiff, he could have easily ascertained whether plaintiff's signature was genuine. The fact that he required and accepted a bill of sale as a means of transferring title, long after the certificate was transferred to him, as alleged in plaintiff's replication and admitted by defendant's motion to strike, makes the presumption of fraud even more conclusive.

The remaining contention made by defendant is that plaintiff failed to join the 8001 Edgewater Road Building Corporation or Reingold as parties defendant, but brought suit only against the Chicago Title & Trust Co. for cancellation of the forged signature, with a prayer that defendant be ordered and directed to deliver to him 2206 shares of the building corporation stock, and that plaintiff have such other and further relief as the court should see fit to grant. It is urged that defendant did not and cannot issue the stock of the building corporation but is merely the distributor thereof, after such shares have been executed and delivered to it by the building corporation; that defendant cannot, nor has it the power to, compel the issuance of any further shares; and therefore, say its counsel, "it follows that no order or decree requiring the defendant to issue the stock could be complied with." *Burke v. Mierenfeld,* 300 Ill. 188, and *Prideaux v. Miller,* 215 Ill. App. 429, are cited in support of this contention. These cases hold that where specific performance is impossible the court will not assume jurisdiction for the purpose of granting relief as to damages. In both these cases the basis of the claim to equity jurisdiction was for specific performance. In the case at bar, which is predicated upon fraud, we think the right of plaintiff to relief and equity under the facts admitted by the pleadings is clear, and if the Chicago Title & Trust Co. cannot compel the issuance of any further shares of stock it can and should be held liable in damages for wrongfully delivering the

stock to Reingold who was not the rightful owner of the certificate and whose rights were predicated entirely upon a forged instrument of which defendant had full knowledge before the shares were delivered. Defendant concedes it to be the established rule of law that forgery can confer no power nor transfer any right. *Telegraph Co. v. Davenport,* 97 U. S. 369; *Chicago Edison Co. v. Fay,* 164 Ill. 323. Therefore, in the light of the foregoing conclusions the order of the circuit court is reversed and the cause remanded with directions that a decree be entered in favor of plaintiff in accordance with the views herein expressed.

*Order reversed and cause remanded with directions.*
SCANLAN and SULLIVAN, JJ., concur.