Jacqueline R. WALKER and Kevin R. Franklyn, Plaintiff,

v.

MICHAEL W. COLTON TRUST, Michael W. Colton, P.C., Michael W. Colton, Melvin Rosen, and Edy's Carpet Heating & Cooling, Defendants.

No. Civ. 98–40315.

United States District Court,
E.D. Michigan,
Southern Division.

April 19, 1999.

Jacqueline R. Walker, Detroit, MI, plaintiff pro se.

Carl L. Collins, III, Detroit, MI, for plaintiff Kevin R. Franklyn.

Kevin R. Franklyn, Detroit, MI, plaintiff pro se.

John E. Jacobs, Jeffrey B. Linden, Mason, Steinhardt, Southfield, MI, for defendant Michael W. Colton.

Michael W. Colton, Farmington Hills, MI, defendant pro se.

Michael W. Colton, Farmington Hills, MI, for Michael W. Colton, P.C., defendant.

Michael W. Colton, Farmington Hills, MI, for defendant Melvin Rosen.

Melvin Rosen, Southfield, MI, for defendant pro se.

---

## MEMORANDUM OPINION AND ORDER GRANTING COLTON DEFENDANTS' SECOND OR RENEWED MOTION TO DISMISS COMPLAINT

GADOLA, District Judge.

Presently before the Court is the second or renewed motion to dismiss plaintiff's complaint filed by defendants Michael W. Colton Trust, Michael W. Colton, P.C., and Michael W. Colton (hereinafter "Colton defendants" or "moving defendants"). Previously, on January 13, 1999, this Court issued a memorandum opinion and order granting in part and denying in part Colton defendants' original motion to dismiss complaint. In that opinion this Court dismissed all counts *except* Counts I and II.[1] With respect to Count I, plaintiff Franklyn was directed to submit a more definite statement of his claim under the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. §§ 2601, *et. seq.* In addition, Colton defendants were allowed to renew their motion to dismiss within 10 days following the submission of plaintiff's more definite statement. On February 10, 1999, plaintiff Franklyn submitted an amended complaint, containing two counts, which purports to contain a more definite statement of his RESPA claim. A hearing on the instant motion was conducted on April 14, 1999.

For the reasons set forth below, the Court will grant Colton defendant's second motion to dismiss complaint.

## I. Factual Background

The following recitation of facts is derived from this Court's January 13, 1999 memorandum opinion and order.

According to defendants, plaintiff Kevin R. Franklyn initiated contact with Mr. Rosen, the manager of Edy's Carpet, Heating & Cooling (hereinafter "Edy's") on June 5, 1997. Mr. Franklyn allegedly telephoned

---

1. In the January 13, 1999 opinion, this Court also found that plaintiff Jacqueline R. Walker lacked standing to proceed as a proper party in the instant law suit because she has no legal ownership interest in the residence at issue, 15435 Ashton, Detroit, Michigan.

Rosen and asked about buying carpet for his home located at 15435 Ashton, Detroit, Michigan. Thereafter, Rosen purportedly went to the property to discuss the transaction with Franklyn. Franklyn then allegedly decided to purchase premium carpeting for his approximately 4,000 square foot home. Defendants maintain that Franklyn was unable to pay for the installation of the carpeting immediately, and therefore requested available financing.

After requesting financing, Rosen allegedly quoted a price of $12,000 for the carpeting and installation, with $2,000 as a down payment, resulting in $10,000 to be financed. According to defendants, Rosen provided Franklyn with the following documents, allegedly explaining each one to plaintiff:

(1) a Mortgage Financing Application (Exh. A to Original Motion to Dismiss)

(2) a Home Improvement Installment Contract (Exh. B to Original Motion to Dismiss);

(3) a written Notice of Right to Cancel (Exh. C to Original Motion to Dismiss); and

(4) a Mortgage (Second) as security, providing an installment payment plan (Exh. D to Original Motion to Dismiss).

According to defendants, Franklyn acknowledged receipt of these documents and executed each document where required, and in front of witnesses and a notary public. Franklyn never canceled the Home Improvement Installment Contract. On July 2, 1997, plaintiff Jacqueline Walker signed a Certificate of Completion, on Franklyn's behalf, acknowledging satisfactory completion of the installation of the carpet. *See* Exh. E to Original Motion to Dismiss. Defendant maintains that Walker was not the buyer in the above-described transaction, nor does she have any legal ownership in the property in question.

Defendant further alleges that Franklyn understood that he was offering a second mortgage for his purchase of the carpeting and installation because, in order to obtain the financing, Franklyn provided Rosen with the following documents:

(1) a Bill of Sale with respect to his purchase of the Ashton property (Exh. F to Original Motion to Dismiss);

(2) a confirming letter from attorneys to Ms. Walker verifying settlement monies given to her to prove her ability to pay (Exh. G to Original Motion to Dismiss);

(3) a Homestead Exemption Certificate (Exh. H to Original Motion to Dismiss);

(4) a Property Transfer Affidavit (Exh. I to Original Motion to Dismiss);

(5) a gift letter evidencing Ms. Walker's gift to Franklyn of money for the purchase of his home (Exh. J to Original Motion to Dismiss); and

(6) excerpts from Franklyn's 1996 federal income tax return (Exh. K to Original Motion to Dismiss);

Ten days after completion of the above-described transaction, on June 17, 1997, Rosen allegedly contacted defendant Michael W. Colton Trust and offered to sell the Franklyn debt along with the mortgage. Defendant Colton, as trustee, then purchased the Home Improvement Installment Contract and the mortgage for valuable consideration. The debt was not in default at that time.

On June 18, 1997, Colton allegedly sent a letter to Franklyn, introducing the Colton Trust as the assignee of the debt. *See* Exh. L to Original Motion to Dismiss. According to defendants, having received no payments from Franklyn, Colton Trust sent letters of default to Franklyn on October 9, 1997. *See* Exhs. M and N to Original Motion to Dismiss. By April 15, 1998, no payments having been made to Colton Trust, a non-judicial foreclosure action was

initiated and the foreclosure sale scheduled for May 22, 1998.

According to defendants, on May 15 and 19, 1998, Mr. Colton was allegedly contacted by telephone by Mr. Lee Scott of Ideal Mortgage. Mr. Lee represented himself as an authorized contact person for Franklyn, and offered a partial payment in exchange for a one week adjournment of the May 22, 1998 foreclosure. According to defendant, on May 20, 1998, Scott guaranteed payment of $250.00 to Colton Trust if Franklyn also paid $250.00 in consideration for Colton Trust's agreement to subordinate its lien on the Ashton Property to Ideal Mortgage's lien. On May 20, 1998, those payments were made, and the May 22, 1998 foreclosure was adjourned for one week. On May 28, 1998, Franklyn allegedly called Colton and requested that the foreclosure be adjourned for an additional week. Colton, acting on behalf of Colton Trust, agreed and adjourned the foreclosure until June 5, 1998.

On June 3, 1998, Colton, acting on behalf of Colton Trust, purportedly signed an agreement subordinating Colton Trust's rights to those of Ideal Mortgage. Thereafter, Colton allegedly received a check from Ideal Mortgage in the amount of $4,500. Colton then paid $1,400 of that sum to Edy's Carpet, Heating & Cooling because Edy's had a lien on the Ashton property due to the fact that Franklyn allegedly only paid $600 out of the $2,000 down payment. See Exh. O to Original Motion to Dismiss. Despite the foregoing, defendants contend that it was specifically agreed that payments would continue on the debt as a condition for Colton Trust's agreement to subordinate its lien to Ideal Mortgage. See Exh. P to Original Motion to Dismiss. Defendants further maintain that by July 2, 1998, Franklyn had again defaulted and further notice of default was sent to him. See Exh. Q to Original Motion to Dismiss. Subsequently, defendants initiated another foreclosure action. Thereafter, plaintiff filed the instant lawsuit.

Defendant Colton allegedly telephoned the Ashton property no more than five times during the time period in question. According to defendants, on one or two of those occasions, Ms. Walker answered the telephone and allegedly informed Colton that she knew about the mortgage and debt, and that she would be making payment in the near future on Franklyn's behalf. According to defendants, all calls were brief and amicable. Defendant lastly maintains that all encumbrances against the Ashton property, including all mortgages or foreclosure actions held or initiated by any of the moving defendants have since been discharged, canceled or otherwise dismissed. See Exhs. R and S to Original Motion to Dismiss.

In response to the above, plaintiff Franklyn has submitted his affidavit in which he presents his version of the facts. In that affidavit, plaintiff Franklyn contends that on June 7, 1997, he did not meet with Colton nor did he sign or execute any legal documents or agree to a second mortgage for $14,117.40. See Franklyn Affidavit ¶ 2. Moreover, plaintiff maintains that on that date, he did not sign or execute a written truth in lending disclosure. See Franklyn Affidavit ¶ 3. Plaintiff further states that on June 17, 1997, ten days later, he did not meet with Colton and that the written affidavit of Melvin Rosen is "untrue because I never agreed to any 2nd Mortgage or had any understanding that I would be required to offer a [second mortgage] as 'Security' to obtain carpeting for my residential homestead on 'credit.'" See Franklyn Affidavit ¶ 5. Plaintiff maintains that on June 7, 1997, he was "subjected to a fraudulent credit transaction by [defendants] ... who induced me into making or fraudulently entering into a 2nd Mortgage in violation of Michigan law...." See Franklyn Affidavit ¶ 6.

On April 13, 1999, plaintiff submitted a "Second Affidavit of Kevin R. Franklyn" and "Memorandum of Law in Support of the Objections and Response to Motion to Dismiss and or Motion for Summary Dis-

position filed by the Colton Defendants." In plaintiff's second affidavit, he restates his allegation that "the foreclosure action filed by Michael W. Colton Trust was 'illegal' and 'unenforceable' because [he] never agreed to put a $14,117.40 Dollar Mortgage Lien against my residential property." *See* Second Franklyn Affidavit ¶ 5. Significantly, plaintiff re-alleges that he *"never* signed a Truth–in–Lending Act Statement or expressly acknowledge such a statement or agreed to any $14,117.40 Dollar Mortgage Obligation or signed any $14,117.40 Dollar Mortgage document(s) on June 7, 1997 with this Michael W. Colton Trust." *Id.* ¶ 6 (emphasis added). Additionally, in Paragraph 11, plaintiff refers to the written mortgage dated June 7, 1997 as "invalid" and states that "this [is a] 'fraudulent' Mortgage document dated June 7, 1997 that I, Kevin R. Franklyn 'never' sign, acknowledge or endorsed on June 7 or June 17, 1997 whatsoever." *Id.* ¶ 11. From these allegations, it is clear that plaintiff is claiming that he *never* signed the documents which appear to contain his signature. In other words, plaintiff is claiming that his signature has been forged.

## II. Legal Standards

The Colton defendants have moved to dismiss plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, Federal Rule of Civil Procedure 56. However, at this early stage in the litigation it would be premature for this Court to consider a motion for summary judgment pursuant to Rule 56. In addition, the Colton defendants previously moved for a more definite statement under Federal Rule of Civil Procedure 12(e) and to strike certain allegations under Federal Rule of Civil Procedure 12(f).[2]

Federal Rule of Civil Procedure 12(b)(6) allows defendant to file a motion requesting dismissal of plaintiff's complaint for failure to state a claim upon which relief can be granted. When evaluating such a motion to dismiss, the court "must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief." *In re DeLorean Motor Co.,* 991 F.2d 1236, 1240 (6th Cir. 1993). The Sixth Circuit further held that the complaint "need only give 'fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Id.* (quoting *Lawler v. Marshall,* 898 F.2d 1196, 1199 (6th Cir.1990)). While this standard is a liberal one, the court also noted that more than a "bare assertion of legal conclusions" is required. *Id.* (citing *Scheid v. Fanny Farmer Candy Shops, Inc.,* 859 F.2d 434, 436 (6th Cir.1988)). It is well-settled that a complaint "must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Car Car-*

---

**2.** Federal Rule of Civil Procedure 12(e) relates to requests for a more definite statement and provides as follows:

[i]f a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading. The motion shall point out the defects complained of and the details desired. If the motion is granted and the order of the court is not obeyed within 10 days after notice of the order or within such other time as the court may fix, the court may strike the pleading to which the motion was directed or make such order as it deems just.

Fed.R.Civ.Proc. 12(e). In addition, Federal Rule of Civil Procedure 12(f) governs motions to strike and provides that

[u]pon motion made by a party before responding to a pleading or, if no responsive pleading is permitted by these rules, upon motion made by a party within 20 days after the service of the pleading upon the party or upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.

Fed.R.Civ.Proc. 12(f).

*riers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1106 (7th Cir.1984), *cert. denied,* 470 U.S. 1054, 105 S.Ct. 1758, 84 L.Ed.2d 821 (1985). Finally, the Sixth Circuit has held that "[a] judge may not grant a Fed. R.Civ.P. 12(b)(6) motion to dismiss based on a disbelief of a complaint's factual allegations." *DeLorean,* 991 F.2d at 1240.

## III. Analysis

Only two counts remain for consideration, both contained in plaintiff's amended complaint. Count I is entitled "Violation of the Federal Truth in Lending Act and Regulation Z—15 USC # 1640(f)—Action for Damages, Attorneys Fees and Right to Rescind." Count II is entitled "Suit in Equity to Rescind and Cancel the June 7, 1997—Credit Transaction and the Fraudulent Mortgage Document pursuant to 15 USC # 1635 et. seq.—Forthwith." Each count will be considered below.

### A. Count I—Plaintiff's Claim under Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. §§ 2601, *et. seq.*

 In the previous memorandum opinion and order issued January 13, 1999, this Court directed plaintiff to submit a more definite statement of his claim under the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. §§ 2601, *et. seq.* Plaintiff has failed to submit such a statement as required by this Court's previous order and pursuant to Federal Rule of Civil Procedure 12(e). Instead of submitting a more definite statement, plaintiff has filed an amended complaint.

In Paragraph 15 of the amended complaint, plaintiff does cite RESPA, 12 U.S.C. § 2605(e), as support for the proposition that the disclosure requirements of that section have not been satisfied by defendants.[3] Plaintiff alleges that the

---

**3.** Section 2605, Title 12, United States Code provides, in pertinent part, as follows:

(e) Duty of loan servicer to respond to borrower inquiries

(1) Notice of receipt of inquiry

(A) In general

If any servicer of a federally related mortgage loan receives a qualified written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 20 days (excluding legal public holidays, Saturdays, and Sundays) unless the action requested is taken within such period.

(B) Qualified written request

For purposes of this subsection, a qualified written request shall be a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that—

(i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and

(ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

(2) Action with respect to inquiry

Not later than 60 days (excluding legal public holidays, Saturdays, and Sundays) after the receipt from any borrower of any qualified written request under paragraph (1) and, if applicable, before taking any action with respect to the inquiry of the borrower, the servicer shall—

(A) make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of such correction (which shall include the name and telephone number of a representative of the servicer who can provide assistance to the borrower);

(B) after conducting an investigation, provide the borrower with a written explanation or clarification that includes—

(i) to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer; and

(ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower; or

(C) after conducting an investigation, provide the borrower with a written explanation or clarification that includes—

(i) information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and

(ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower.

"June 7, 1997 credit transaction involving Defendant Melvin Rosen and Plaintiff Kevin Franklyn was clearly subject to the Federal Truth and Lending Act and Regulation Z (15 USC # 1640) and the Disclosure Requirements of: 15 USC # 1631(a) and the Real Estate Settlement Procedures Act (12 USC # 2605(e)) as a matter of U.S. law." *See* plaintiff's amended complaint ¶ 15.

RESPA, Section 2605, sets forth certain duties of a loan servicer after receiving borrower inquiries. Specifically, the section requires servicers to respond to a "qualified written request" from the borrower within 20 days of receipt. *See* 12 U.S.C. § 2605(e)(1)(A). The section also mandates that the servicer take certain actions within 60 days following the borrower's inquiry. *See* 12 U.S.C. § 2605(e)(2).

In the instant case, plaintiff has failed to allege that he has made such a "qualified written request" to defendants or that defendants have failed to take any actions required under 12 U.S.C. § 2605(e). Section 2605(e) does not relate to "disclosure" requirements. As a consequence, the Court finds that plaintiff has failed a state a claim under RESPA. The mere citation of the statute, without more, is insufficient to satisfy the pleading requirements. *See* Fed.R.Civ.Proc. 8 (plaintiff must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief . . . .").[4]

Accordingly, the Court will grant Colton defendant's motion to dismiss plaintiff's RESPA claim.

## B. Count I—Plaintiff's Claim under the Truth in Lending Act (TILA), 15 U.S.C. § 1601 *et seq.*

■ Colton defendants renew their motion to dismiss with respect to plaintiff's claim under the Truth in Lending Act (TILA), 15 U.S.C. § 1601 *et seq.* In the previous memorandum opinion, this Court noted that plaintiff's TILA claim appeared to be barred by the one-year statute of limitations contained within the statute. See 15 U.S.C. 1640(e) ("[a]ny action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation.").

Nevertheless, the Sixth Circuit has held that "TILA provides a right to rescind a transaction involving a security interest on the residence of the debtor until midnight of the third business day following the consummation of the transaction *or* the delivery of the disclosures required regarding the right to rescind and all other material disclosures, whichever is later." *Rudisell v. Fifth Third Bank,* 622 F.2d 243, 247 (6th Cir.1980) (citing 15 U.S.C. § 1635). Furthermore, "[i]f the disclosures are never made, the debtor has a *continuing right* to rescind." *Id.* In keeping with the Sixth Circuit's holding in *Rudisell,* this Court found that plaintiff had succeeded in stating a claim under TILA because of plaintiff's purported "continuing right" to rescind.

However, Colton defendants now advance the argument that, as a threshold issue, TILA is not applicable at all to the case at bar. Specifically, defendants assert that pursuant to the federal regulation

(3) Protection of credit rating
 During the 60–day period beginning on the date of the servicer's receipt from any borrower of a qualified written request relating to a dispute regarding the borrower's payments, a servicer may not provide information regarding any overdue payment, owed by such borrower and relating to such period or qualified written request, to any consumer reporting agency (as such term is defined under section 1681a of Title 15). 12 U.S.C. 2605(e).

4. The Court need not reach Colton defendants' additional argument that they do not qualify as lenders who offer "federally related mortgage loans," and thus RESPA is not applicable to them. *See* 12 U.S.C. § 2602(1)(A) & (B).

implementing TILA (known as "Regulation Z"),

> this regulation applies to each individual or business that offers or extends credit when four conditions are met: (i) the credit is offered or extended to consumers; (ii) the offering or extension of credit is done regularly; (iii) the credit is subject to a finance charge or is payable by a written agreement in more than 4 installments; and (iv) the credit is primarily for personal, family, or household purposes.

12 C.F.R. § 226.1(c). Defendants argue that taking as true plaintiff's own statements contained in his affidavit, no credit sale transaction ever took place. *See* Franklyn affidavit ¶¶ 2–7. According to plaintiff, he did not "sign or execute any legal documents or agree to a 2nd mortgage" nor did he "sign or execute a written truth-in-lending disclosure statement...." *Id.* ¶ 2 & 3. Throughout plaintiff's affidavit, he refers to the documents at issue as "fraudulent" and appears to be claiming that signatures on the subject documents are complete forgeries. Colton defendants maintain that such allegedly forged documents cannot, as a matter of law, be utilized as a basis for a claim under TILA, citing *Jensen v. Ray Kim Ford, Inc.*, 920 F.2d 3 (7th Cir.1990) and *First Nat'l Bank v. Shaw*, 149 Mich. 362, 112 N.W. 904 (1907).

In *Jensen*, the Seventh Circuit affirmed the district court's dismissal of plaintiff's Truth in Lending Act claim for failure to state a claim upon which relief could be granted pursuant to Fed.R.Civ.P. 12(b)(6). In that case, the court held that an allegedly forged retail installment contract was a nullity, and, therefore, TILA did not prohibit it nor provide a remedy. As the court noted,

> [t]he plaintiffs' complaint clearly alleges wrongdoing by Ray Kim Ford, but wrongdoing alone does not establish a

Truth in Lending Act violation. The Truth in Lending Act encourages the informed use of credit by requiring lenders to disclose terms that will allow consumers to compare different offers and enter into contracts intelligently. 15 U.S.C. S 1601. The forgeries, however, did not affect the Jensens' ability to shop intelligently because Ray Kim Ford is bound by the terms of the first contract, and the Jensens never attempted to argue that the first contract contains Truth in Lending Act violations. The Jensens base their claim on the second contract, but this contract is a nullity and does not bind them; "a forged note is by the common law absolutely void, unless it has in some way been ratified by the payor." *Krueger v. Dorr*, 22 Ill.App.2d 513, 161 N.E.2d 433, 439–40 (1959); see also *Chrystyan v. Feinberg*, 156 Ill.App.3d 781, 109 Ill.Dec. 412, 415, 510 N.E.2d 33, 36 (trustee's deed void because signature was forged on letter of direction), app. den., 116 Ill.2d 549, 113 Ill.Dec. 294, 515 N.E.2d 103 (1987); *Mruk v. Chicago Title & Trust Co.*, 328 Ill.App. 402, 66 N.E.2d 478, 481 (1946) (certificate of deposit with forged indorsement cannot confer any power or transfer any right).

*Id.* at 4. The Seventh Circuit further commented that TILA "does not reach the forged document which created no obligation until later ratification by the plaintiff[ ]....." *Id.*

In the instant case, plaintiff has not ratified the allegedly forged documents. Taking as true the factual allegations asserted in his affidavits, this Court has no choice but to dismiss plaintiff's TILA claim because such allegedly forged documents receive no protection under TILA, as the Seventh Circuit in *Jensen* made clear.

Accordingly, the Court will grant Colton defendant's motion to dismiss plaintiff's TILA claim.[5]

---

5. With respect to any alleged claims asserted by plaintiff under the "Federal Consumer Protection Act," 15 U.S.C. §§ 1601 et seq.,

any such claims shall be dismissed as well because that Act is merely another name for the Truth in Lending Act (TILA), 15 U.S.C.

### C. Count II—Plaintiff's claims for recission under TILA, 15 U.S.C. § 1635 and for equitable recission

■ Colton defendants renew their motion to dismiss plaintiff's claim for recission pursuant to TILA, 15 U.S.C. § 1635. As previously discussed, defendants argue that as a threshold matter TILA is inapplicable where such a claim is premised on allegedly forged documents. *See Jensen*, 920 F.2d at 4. The claim for recission under TILA, 15 U.S.C. § 1635, therefore would also be unavailable to plaintiff. The Court agrees with defendants that TILA is unavailable to plaintiff, again following the *Jensen* court's pronouncement that TILA does not apply in cases of allegedly forged documents. Taking as true the allegations set forth in plaintiff's complaint and affidavits that he never signed the documents in question, plaintiff has failed to state a claim for recission under TILA. Accordingly, this claim will be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

■ Turning now to plaintiff's claim for equitable recission appearing in Count II of his amended complaint, at the outset it must be mentioned that this Court previously had dismissed all state law claims in the exercise of its discretionary power of pendent jurisdiction. Even had this Court not already dismissed all of plaintiff's state law claims, this Court *could not* adjudicate plaintiff's claim for equitable recission at this juncture. This Court's subject-matter jurisdiction in the instant case is premised *solely* upon the existence of a federal question pursuant to 28 U.S.C. § 1331. There is no diversity of the parties, both plaintiff and defendants being residents of Michigan. Since the Court has concluded that plaintiff has no valid claims grounded in federal law, no subject-matter jurisdiction exists to hear plaintiff's remaining claim for equitable recission.[6]

The Court notes that defendant Melvin Rosen and defendant Edy's Carpet Heating & Cooling have not joined in either the Colton defendants' original motion to dismiss nor in their second motion to dismiss. Nevertheless, this Court finds that plaintiff has likewise failed to state any valid claim against either of these two other defendants. Accordingly, the instant order shall apply to *all* defendants, dismissing all claims alleged by plaintiff with respect to any and all defendants in the instant action. The Court reiterates that plaintiff is still not without recourse even in light of the current disposition of his case in the federal venue. Plaintiff may still file a claim for equitable recission in state court premised on his contentions that the documents at issue are complete forgeries.

### *ORDER*

**NOW, THEREFORE, IT IS HEREBY ORDERED** that Colton defendants' second motion to. dismiss complaint is **GRANTED;**

§§ 1601 et seq. Previously, in the January 13, 1999 memorandum opinion and order, the Court noted that Colton defendants failed to address any claims asserted under the so-called "Federal Consumer Protection Act." The Court agrees with defendants that plaintiff is merely invoking TILA when he, somewhat confusingly, invokes the "Federal Consumer Protection Act," 15 U.S.C. §§ 1601 et seq. As Section 1601 states, "This title may be cited as the Truth in Lending Act." 15 U.S.C. § 1601.

6. Although this Court is without jurisdiction to adjudicate plaintiff's claim for equitable recission, plaintiff is still free to file such a claim in state court. It is well-settled that "equity may decree the cancellation of a written instrument found to be a forgery." *Tonkin v. Tonkin*, 172 Pa.Super. 552, 94 A.2d 192 (Pa.Super.1953); *see also* 13 Am.Jur.2d Cancellation of Instruments § 9 (1964) ("Under the view that at least where an instrument is not void on its face, the exercise of the equitable cancellation power is clearly proper, and since the invalidity of a forged instrument does not appear on its face, but must be proved by extrinsic evidence, it is generally held or recognized that a forged instrument is a proper subject for equitable cancellation, notwithstanding any remedy which the complainant may have at law.") (citing cases).

IT IS FURTHER ORDERED that all claims contained in plaintiff's amended complaint are DISMISSED with prejudice;

IT IS FURTHER ORDERED that the instant order dismissing all claims shall apply to all defendants, including defendants Melvin Rosen and Edy's Carpet Heating & Cooling; a judgment in accordance with this order shall be entered forthwith.

SO ORDERED.

### JUDGMENT

The Court, having granted Colton defendants' second motion to dismiss complaint, after a hearing held on April 14, 1999, the Honorable Paul V. Gadola, District Judge, presiding,

It is hereby ORDERED and AD-JUDGED that the above-entitled action be dismissed on the merits;

It is hereby ORDERED and AD-JUDGED that judgment be entered in favor of defendants Michael W. Colton Trust, Michael W. Colton, P.C., Michael W. Colton, Melvin Rosen, and Edy's Carpet Heating & Cooling;