HELENE N. WHITE, Circuit Judge,
dissenting.
I respectfully dissent. In concluding that the district court correctly granted summary judgment in favor of Combined Insurance because no valid contract ever existed between Combined Insurance and Prybyla, the majority focuses on the fact that Prybyla never applied for any of the insurance policies, either personally or through an authorized agent. However, the essential elements of a contract were otherwise present. All parties had the capacity to enter into contracts. The terms of the insurance policy offered by Combined Insurance were accepted, the consideration was paid, and a policy was issued. The material facts — the identity and history of the insured — were accurately represented in the application and accurately made part of the contract. That Costello signed Prybyla’s name in his absence and that Prybyla did not learn of Blair’s fortuitous generosity until later is immaterial to the essential terms of the contract. It begs the question to say that a contract was not formed because Prybyla was not present so could not have had a “meeting of the minds” with Combined Insurance, and that the contract stated Prybyla was the applicant, not Blair, so no contract could have been formed between Blair and Combined Insurance. The question is whether these circumstances preclude the formation of a contract when the essential elements are otherwise present. Further, although Prybyla was not present when the “cancer only” policy application was completed and did not authorize Blair or Costello to complete it on his behalf, Prybyla could still have ratified this contract by accepting the benefits, thereby making it valid.[1]
It could be argued that by signing Pry-byla’s name on the application, Costello committed forgery under Michigan law. Bank of Detroit v. Standard Accident Ins. Co., 245 Mich. 14, 21, 222 N.W. 134, 136 (Mich.1928) (“It is the essence of forgery that one signs the name of another to pass it off as the signature or counterfeit of that other.”) (citations and internal quotations omitted). A party who establishes that a contract is based on forgery is entitled to have it voided due to a lack of mutuality of agreement.[2] See Camp v. Carpenter, 52 Mich. 375, 379, 18 N.W. 113, 115 (Mich. 1884); see also Hawk v. Gen. Am. Life Ins. Co., No. 86-CV-74718-DT, 1987 U.S. Dist. LEXIS 15498, at *4-5 (E.D.Mich. Nov. 3, 1987) (“Either Louise Hawks *369 signed the application or she didn’t. If she didn’t actually sign the application, i.e. [,] her signature was forged, then there is clearly no contract of insurance which the insurer would be obligated to honor.”).
However, “[wjhere the unauthorized signing of another’s name to an instrument does not constitute the crime of forgery, the party whose name was so signed may ratify the signature and become bound thereby.” 3 Am.Jur.2d Agency § 188 (2010); see also First Nat’l Bank of Durand v. Shaw, 149 Mich. 362, 366, 112 N.W. 904, 905 (Mich.1907) (“There can be no serious doubt that forgery of a negotiable instrument, or the indorsement thereon, except in ease of ratification or estoppel, nullifies the instrument as to all parties against whom the forgery is committed.”) (emphasis added).
Although Costello signed Prybyla’s name on the insurance application, it appears that neither she nor Blair acted with the intent to defraud Prybyla or Combined Insurance. See People v. Warner, 104 Mich. 337, 340, 62 N.W. 405, 406 (Mich. 1895) (“The common-law definition of ‘forgery’ is ‘a false making, or a making malo animo of any written instrument with intent to defraud.’ ”). The majority does not address the issue whether Blair or Costello intended to defraud Prybyla or Combined Insurance. Indeed, it appears that Blair was simply purchasing insurance coverage for her friend.
Numerous Michigan decisions have upheld contracts that were signed by those having no authority to do so, but that were later ratified. See, e.g., Leslie v. Kennedy, 249 Mich. 553, 556-57, 229 N.W. 469, 470 (Mich.1930) (“[Carrier] had no authority and no legal right to sign Henley’s name to the contract and assignment. But he personally gained nothing by doing so.... The defendants have ratified such act, and by their consent, indorsed upon the assignment, have secured to plaintiff an enforceable contract... .We see no reason why he should be permitted in a court of equity to rescind the contract for this reason.”).
Here, the invalidity of the contract rests with its execution and not with its subject matter. As a result, Prybyla could have ratified the contract, thereby making it valid. The record is unclear regarding whether Prybyla specifically ratified the contract, as there is conflicting testimony concerning when he learned of the existence of the policies and the actions he subsequently took with respect to the policies. On the other hand, Blair, presumably with O’Connor’s and Prybyla’s knowledge, filed a claim pursuant to the policy in order to get benefits for Prybyla, and O’Connor repeatedly followed up with Combined Insurance regarding the claim. Further, Combined Insurance continued to accept payments from Blair for all three policies until they lapsed, thereby potentially evincing its own ratification of the contract. Thus, there are genuine issues of material fact as to whether Prybyla (and Combined Insurance) ratified the contract at issue.
Michigan Compiled Laws § 500.2218 also dictates that summary judgment be denied. The statute does not permit Combined Insurance to invalidate the contract because a false signature on an insurance-policy application does not in itself constitute a material misrepresentation under § 500.2218. Examples of material misrepresentations include misrepresentations regarding whether an applicant for health insurance “has not had previous medical treatment, consultation or observation, or has not had previous treatment or care in a hospital or other like institution.” Mich. Comp. Laws § 500.2218(4). Here, al *370 though the signature on the application was not Prybyla’s, he was the intended insured under the policy. Thus, the falsity of the signature would not have affected the risk assumed by Combined Insurance, where the remaining information in the application was correct. Additionally, the public policy expressed in 500.2218 should not be avoided on the basis that a contract was not formed. An application was submitted and a policy was in effect. This is precisely the situation 500.2218 is intended to address.
Because there remain genuine issues of material fact with respect to contract formation and ratification, as well as the nature of the misrepresentations, I would reverse the grant of summary judgment to Combined Insurance and remand for further proceedings.

. The majority accurately states that counsel for O'Connor stated that he did not assert ratification. Nevertheless, the essence of O'Connor’s argument is that Blair made a contract for Prybyla that Prybyla and O'Con-nor accepted.

. Some cases also suggest that ''[e]ven in the absence of any intent on the part of the insured to deceive the insurance company, the insurer may avoid the contract if a palpable fraud has been perpetrated upon it by its agent." Fakhouri v. Banner Life Ins. Co., 157 *369 F.Supp.2d 751, 757 (E.D.Mich.2001) (quoting Henson v. John Hancock Mutual Life Ins. Co., 261 Mich. 693, 697, 247 N.W. 102 (Mich. 1933) (additional citation omitted)).